## CLARA V. WILLIAMS and others, *vs.* JOS. HOLMES and others.

Under our testamentary system, the orphans courts have authority to make distribution *in kind* of personal estate, remaining in the hands of the administrator after payment of debts, consisting of *chattels real*, and they may make such distribution even where *infants* are parties interested.

It is the policy of our testamentary system to require distribution to be made *in kind*, unless a sale is necessary for a satisfactory division, and whether such necessity exists or not, is for the court to decide in view of the circumstances.

The absence of power in the orphans court to appoint a *guardian ad litem* to infants, would not render nugatory and void the authority to make distribution, expressly given to that tribunal whose duty it is to take special care of the rights of infants in all cases before them involving such rights.

The orphans court has the power, under a liberal construction of the remedial act of 1810, ch. 34, whenever called upon to distribute specific personal property, whether chattels real or personal, if they think proper so to do, to appoint two disinterested persons to make such distribution.

In making such distribution, it is not absolutely necessary in every case that the specific property allotted to each party should be equal in value; the inequality may be remedied by payments in money, the court having ample power to sell a portion of the estate to provide for such payments.

A report of a partition previously made and set aside by the court, may, in a subsequent application for a partition, be used by the witnesses as a written memorandum to refresh their recollections, but not as evidence to show the correctness of the partition therein set forth.

APPEAL from the Orphans Court for Baltimore city.

This appeal was taken from an order of the court below,

36      v.9

directing a sale of the leasehold estate of William Williams, deceased, and refusing to make partition of the same. The facts of the case are fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLE-STON and MASON, J.

*T. Parkin Scott* for the appellants, argued:

1st. That the orphans court has full power, authority and jurisdiction to divide *all* the specific property and estate of an intestate, remaining after payment of debts, amongst the distributees. Chattels real are *assets*, and, by the express requirements of the law, *leasehold property* must be returned and included in the *inventory* of the estate. There is no *limitation* or *exception* specified, but *all* the surplus, of whatever it may consist, whether chattels real or personal, must be distributed by the court. This is clear from the provisions of the act of 1798, ch. 101, sub-ch. 15, secs. 1 and 12; sub-ch. 14, sec. 12, and sub-ch. 11, sec. 16. That the orphans court have the power to divide specifically such leasehold property, was clearly decided by Chancellor Bland, in *Hewitt's case*, 3 *Bland*, 184. The court ought not to decree a sale if distribution can be made without sale. 6 *G. & J.*, 192, *Evans vs. Iglehart.* 8 *G. & J.*, 244, *Alexander vs. Stewart.* 2 *Md. Rep.*, 103, *Hanson vs. Brawner.* And the court may itself make distribution, or appoint persons to do it, this power being given to them under the proper and liberal construction of the act of 1810, ch. 34, sec. 5. It makes no difference that *infants* are interested in the distribution. The law makes no exception in their favor in this particular. If a guardian *ad litem* be necessary for such distribution, then, I contend, that the orphans court has the power to appoint one in such a case. But suppose they have no such power, what necessity is there for such a guardian, when the proceedings are before a court whose peculiar office it is to guard and protect the rights and interests of infants and orphans?

2nd. That the leasehold estate in this case is susceptible of advantageous partition amongst the widow and children of the

deceased, so as to give a part thereof to each, and, for the purpose of establishing this fact, the *plat* and proceedings upon the former partition, made under the direction of the court and afterwards set aside, are admissible to show the nature and condition of the property, and to show how it can be divided; or that it was competent for the witnesses to refer to them as a memorandum, to refresh their memories and to illustrate their evidence, considering the circumstances under which such proceedings were had and the plat made.

3rd. That in making distribution of the *specific* property of the intestate, it is not necessary that the portion allotted to each child should be of the same value, and that the shares may be equalised in value by the addition or substraction of money, and that in this case there was money of the estate in the hands of the administrator to do so. 1 *Peere Wms.*, 447, *Clarendon vs. Hornby*. 1 *Green's Ch. Rep.*, 345, *Brookfield vs. Williams*.

*John Stewart* for the appellees, argued :

1st. That the report of the commissioners and the proceedings in reference to the partition which was set aside, cannot be considered by this court on this appeal:—1st. Because the case set forth in those proceedings has been finally adjudicated in the orphans court, there having been *no appeal* from the order annulling that partition; and 2nd. Because those proceedings are totally *irrelevant* to the question at issue on the present appeal.

2nd. That the order appealed from in this case was right and proper:—1st. Because the orphans court have not the power by law to divide *chattels real* between the distributees of a deceased party, their power merely extending to the distribution of "*specific articles*," named in the *inventory*. By the act of 1798, ch. 101, sub-ch. 1, sec. 16, power is given to the court to make distribution, in case the surplus in the hands of the administrator shall consist of "*specific property, or articles* mentioned in the inventory;" and by the act of 1810, ch. 34, sec. 5, power is given to that court, "whenever a distribution of *specific articles* is to be made," to appoint two disin-

terested persons to make the same. The question then is, is *leasehold property* embraced in the phrase "*specific articles?*" We say not, and that these words are applicable only to articles of *personal property* mentioned in the inventory. We find this very phrase *defined* in the 12th sec. of the 12th sub-ch. of the act of 1798, ch. 101, where it is said: "In case the personal property of a ward shall consist of *specific articles, such as slaves, working beasts, animals of any kind, stock, furniture, plate, books, and so forth.*" Thus we have in the very same act a clear *definition* and *explanation* of the terms "*specific articles*," showing that they embrace only articles of *personal property,* such as are specified above, and that they do not include chattels real. See also on this subject the *Acts of* 1831, *ch.* 311, *sec.* 1; 1835, *ch.* 380, *sec.* 9; 1816, *ch.* 203, *sec.* 2. 6 *H. & J.,* 67, *Scott vs. Burch.* 2 *H. & G.,* 120, *Brodess vs. Thompson.* 2 *Bland,* 25, *Crapster vs. Griffith.* 6 *G. & J.,* 199, *Evans vs. Iglehart.* 2nd. Because the orphans court has not the power to appoint a guardian *ad litem,* and that the guardian of the infants had no right to act for them in the premises. This court, by the 20th sec. of the 15th sub-ch. of the act of 1798, ch. 101, is forbidden to exercise any jurisdiction not expressly given by that act under pretext of incidental power or constructive authority. They cannot therefore appoint a guardian *ad litem* for the infants, and without such a guardian the division of leasehold estate cannot be made. 3rd. Because the orphans court have the right to *distribute* all the personal estate of the deceased, and in case of chattels real, where infants are among the parties to the distribution, the only mode of distribution is by sale and division of the proceeds.

ECCLESTON, J., delivered the opinion of this court.

At the instance of the widow and some of the children of William Williams, deceased, the orphans court of Baltimore city appointed three persons to re-appraise and distribute the personal estate of the deceased, among the parties entitled to the same. On the 30th of August 1855, the persons so appointed made a report to the court, that the leasehold property,

(now in controversy,) was capable of a division which would operate equally among the representatives of the deceased, and that a division thereof had been made in the manner set forth in the report.

On the 3rd of September 1855, after the division or distribution had been reported, some of the distributees filed a petition, praying that the order of the court under which the division had been made might be revoked, and that the reappraisement and division, or partition, should be pronounced by the court null and void. To this petition Clara V. Williams and William H. Williams, the administrators, filed an answer; and on the 24th of September 1855, the court granted the prayer of the petition, by revoking their former order, and pronouncing the re-appraisement and partition null and void. From which decision no appeal has been taken, and both parties concede that it is not now before us for revision.

On the 25th of the same month, the present appellants filed a petition, praying the court to appoint a day for making a distribution of the estate, and, by summons, to call upon the parties in interest to appear, and that the court would distribute the estate.

Three days afterwards a petition was filed by Joseph Holmes and Mary E. Holmes, his wife, Catharine Schaum, Alexander Williams, and Matilda Williams, by her next friend, Joseph Holmes, in which they pray that the chattels real belonging to the estate may be sold, and the proceeds distributed.

The children of the deceased are: William H. Williams, (the appellant,) Mary E. Holmes, Catharine A. Schaum, and Alexander, Caroline H., Matilda, Sarah, Mary Ann, Clara V., and Amelia E., Williams; the five last named being minors. Clara V. Williams, (the appellant,) is the widow of the deceased, and it appears she has been appointed guardian to three of the children, but their names are not given.

On the 2nd of October, the petition of the appellants was answered, by Joseph Holmes and Mary E., his wife, Catharine A. Schaum, Alexander Williams and Caroline Williams. They allege that all the personal estate had been sold except chattels real, which they say the orphans court have no right to divide.

On motion of the counsel for the administrators, their petition for a distribution, and that of Joseph Holmes and others, for a sale, the court ordered to be consolidated, and thereafter to be taken and considered as one case.

Evidence was offered for the purpose of showing that the leasehold·property would admit of partition, without injury to the parties entitled; and proof of a contrary character was also given.

On the 5th of November 1855, the court passed a decree directing the leasehold property to be sold.̇ This they did, as the language of the decree clearly shows, because they were of opinion that they had "no power to divide specifically, or by partition, leasehold estate, and "that an infant could not, either by himself or through a guardian, give consent to such division."

From this decree the present appeal is taken, and requires us to decide whether under our testamentary laws, without a sale, the orphans courts have authority to make distribution of leasehold property remaining in the hands of administrators after the debts of the intestate have been paid.

By the act of 1798, ch. 101, sub-ch. 7, it is provided, that the inventory of a deceased's estate, which is required to be taken and returned, shall include *leases for years,* and that they "shall be considered as assets in the hands of an executor or administrator."

The 11th sub-ch. commences, by directing that when all the debts of an intestate have been paid, or a sufficient amount of the assets allowed to be retained to pay them, "the administrator shall proceed to make distribution of the surplus," among the parties entitled to the same under the provisions of that chapter, the 16th, and concluding, section of which provides, that "in case the surplus remaining in the administrator's hands after payment of all just debts exhibited and proved, or notified and not barred, or after retaining for the same, shall consist of specific property, or articles mentioned in the inventory or inventories, the administrator, if he cannot satisfy the parties, may apply to the court to make the distribution, and the court may appoint a day for making distribution,

and, by summons, call upon the said parties to appear, and the court may, at the appointed time, proceed to distribute, but if a majority in point of value shall neglect to appear, or appearing shall object to the distribution of the articles, or if the court shall deem a sale of the said articles, or any part of them, more advantageous, a sale shall be directed accordingly, and the rules hereinbefore laid down, relative to a sale by order of the said court, shall be observed."

The 12th sec. of sub-ch. 14, authorises an executor or administrator to appoint a meeting of creditors, or of persons entitled to distributive shares or legacies, or a residue, on some day by the court approved, and "payment or distribution may be there made, under the court's direction and control."

In the 1st section of sub-ch. 14, among other matters declared to be within the jurisdiction of the orphans court, are included, "superintending the distribution of the estates of intestates, securing the rights of orphans and legatees, and administering justice in all matters relative to the affairs of deceased persons, according to law."

*In Hewitt's case,* 3 *Bland's Rep.,* 184, it appears Eli Hewitt died intestate, leaving his three sons, Eli, Rezin and Jacob, his heirs at law, and that at his decease he was seized of certain real estate in fee, and possessed some chattels real ; which the bill alleged to be incapable of division, and prayed that they might be sold for the purpose of dividing the proceeds. The bill was filed by Eli, making his two brothers defendants. By a commission from chancery Jacob had been found a lunatic, and placed in the custody of Rezin as his trustee. Because the trustee was personally interested in the controversy, the chancellor considered it necessary to appoint a disinterested, capable person, as guardian to the lunatic, to answer for him. And such guardian was appointed.

The special and distinctly expressed object of the bill, as understood by Chancellor Bland, was "to obtain a partition of an intestate's estate among his heirs."

The chancellor did not doubt his authority to make partition of real estate claimed either by descent, or by purchase ; nor did he doubt the power of his court to make partition of

any personal property among its several owners: nevertheless he dismissed the bill so far as related to the chattels real, and referred the parties "to the orphans court to obtain the proper distribution." Why he did so may be seen by the following quotation from his opinion: "But this bill does not allege that these parties, or any of them, are at present in actual possession of the chattels real of which the intestate died possessed; on the contrary, it has been verbally admitted, that these chattels real passed into the hands of his administrator, and yet remain to be accounted for by him. The administrator of the intestate has not been made a party to this suit; nor could he, with propriety, have been made a party solely for the purpose of obtaining a partition of any of the personal estate in his hands; because the power to make a distribution of the surplus of the personal estate remaining in the hands of the administrater, has been conferred upon the orphans court, with which this court should not interfere, except on account of some special circumstances to which the powers of the orphans court may not be altogether adequate. Nothing of the sort has been intimated in this case."

From this decision it was evidently the opinion of the learned chancellor, that where the application is to make partition or distribution of leasehold property, belonging to the estate of an intestate, remaining, as a surplus, in the hands of the administrator, the application should be made to the orphans court; which tribunal has the appropriate jurisdiction over the subject, with which the chancery court will not interfere; except on account of special circumstances, in regard to which the powers of the orphans court may not be fully adequate.

That one of the parties is a lunatic, requiring the appointment of a guardian *ad litem*, is not one of those special circumstances alluded to, as rendering the power of the orphans court inadequate; because, in the case before the chancellor, Jacob Hewitt, one of the defendants, was a lunatic.

In the case of a lunatic defendant, when his trustee is a party interested in the suit or proceeding, a guardian *ad litem* for the lunatic, is as necessary, according to the usual practice in the courts, as such a guardian would be for an infant.

And if Jacob Hewitt, instead of being a lunatic had been an infant, we cannot suppose that would have changed the decision of the chancellor, as to the appropriate tribunal for making distribution of the chattels real.

Reference has been made to the subject of a guardian *ad litem*, because the counsel for the appellees insist that the orphans court have no power to appoint such a guardian; and for that reason, where infants are concerned, the court cannot make partition of leasehold estate. Express authority to make such an appointment, it is said, is no where given, and by the 20th sec. of sub-ch. 15, of the act of 1798, the court cannot, "under pretext of incidental power, or constructive authority, exercise any jurisdiction whatever not expressly given" by that act, or some other law.

Whilst, however, it is said the absence of power to appoint a guardian *ad litem*, will prevent the court from making partition of leasehold property, specifically, yet it is not only conceded by the appellees, but earnestly insisted upon, that the court even where infants are concerned, may direct a sale of such property and distribute the proceeds, and may divide or distribute, in kind, any other species of personal estate. But surely there is as much necessity for such guardian to protect the interests of minors, in the latter class of cases as in the former. And if without such guardians, in the latter the court may proceed as the appellees contend, why may they not do so likewise in the former? The testamentary laws contain no provisions which create any distinction between chattels real and other personal property requiring the appointment of guardians *ad litem* in proceedings relating to the one and not to the other.

Viewing Chancellor Bland's decision in connection with the extracts we have made from the act of 1798, we think there can be no doubt that after the debts of an intestate have been paid, the orphans court have authority to make distribution in kind of the surplus of personal estate remaining in the hands of the administrator, consisting of chattels real, as fully as they have to make such distribution of other chattels or personal property. And their authority thus to distribute is

37    v.9

no where limited or restricted, because infants are parties in-
terested.

Not only has the legislature conferred upon the court power
to divide the surplus of the estate specifically, but, according to
the doctrine announced in *Evans vs. Iglehart*, 6 *G. & J.*,
192, it is the policy of our system to require such a division to
be made, instead of converting the property into money; un-
less a sale is necessary for making a satisfactory distribution.
Whether such necessity exists or not, is, of course, for the court
to decide in view of the circumstances.

Where such power is expressly given, and that without
limitation or restriction on account of infancy, should it be
conceded, (without so deciding,) that the orphans court cannot
appoint a guardian *ad litem*, still, the absence of such power
of appointment will not render nugatory and void, the authority
to make distribution expressly given to a tribunal, the name of
which, and the nature and character of its jurisdiction, clearly
indicating that the judges thereof are required to guard and to
take special care of the rights of infants, in all cases coming
before them involving such rights. The quotation taken from
the 1st section of sub-ch. 14, shows, that "superintending the
distribution of the estates of intestates," and "securing the
rights of orphans," are duties assigned to the orphans court.

It appears, that in the present case, a majority of the parties
interested, in point of value, were before the court, and that a
majority in value did not object to a partition. Under such
circumstances the application of the appellants was refused by
the court; not, however, because they deemed a sale more
advantageous, but they directed a sale for the purpose of dis-
tributing the proceeds, in consequence of believing they had
"no power to divide specifically, or by partition, leasehold
estate." In making such a decision we think the court com-
mitted an error.

In the course of the argument it was made a question,
whether the report of the 30th of August 1855, of the partition,
made by the persons appointed for that purpose, in the pro-
ceeding subsequently annulled, could be used as evidence be-
fore the court below, in the present case. On this subject we

deem it sufficient to say, that to the extent to which written memoranda, made by witnesses, may be used by them for the purpose of refreshing their memories, so far was it proper to use the instrument in dispute, so as to enable the witnesses who made it, to refresh their recollections. But it was not evidence before the court to show the correctness of the partition therein set forth.

In relation to this branch of the case it is deemed proper to remark, that, in our opinion, as the act of 1810, ch. 34, is a remedial and very beneficial statute, it is perfectly proper, under the rule requiring a liberal construction of such statutes, to hold, that whenever the orphans courts are called upon to make distribution of specific personal property, whether of chattels real or personal, this act confers upon the courts, power, if they think proper so to do, to appoint two disinterested persons, not in any way related to the parties concerned, to make such distribution among the persons entitled, according to the provisions of the law.

In consequence of a portion of the argument, we will say, that in making partition by the orphans court, it is not absolutely necessary, in every case, that the portion of specific property, allotted to each party, should be equal in value. The inequality may be remedied by payment of the difference in money; the court having ample power to sell a portion of the estate so as to provide for such payments when necessary.

The decree will be reversed and the cause remanded for further proceedings. The costs are to be paid out of the estate.

*Decree reversed and cause remanded.*