ELLEN  AMEY  *vs.*  CHARLES  THOMAS  COCKEY,  and
HENRY BARGAR.

*Disability of Infancy—Entries in a Bible—Evidence—Parti-*
*tion—Disaffirmance of Deed of Partition—Unreasonable*
*delay.*

Where a person seeks to disaffirm, on the ground of infancy, a deed
made by him, the burden of proof is upon him; and it is in-
cumbent upon him to show beyond reasonable doubt, that the
deed was made at a time when he was under the disability of
infancy.

The entries in a family Bible produced, as to the dates of birth of
the plaintiff, and her brother, whose infancy was also in ques-
tion, were manifestly made years after the occurrence of the
events recorded; and while the Bible came from the possession
of an aunt of the plaintiff there was no evidence to show when,
or by whom, or under what circumstances the entries were
made.  HELD :

That said entries were entitled to little or no weight as evidence on
the question of age.

A letter written by the aunt to the plaintiff, at her request,
some eight years before the proceeding was instituted, was also
produced, containing statements appearing to have been made in
answer to inquiries of the plaintiff, having reference to some con-
templated litigation, but whether to the pending suit or some
other did not distinctly appear.  HELD :

That such statements, made under such circumstances, could not
be accredited as satisfactory evidence of the fact sought to be
established.

Where parties make such a partition among themselves by deed, as
a Court of equity had ample power and jurisdiction to sanction,
and require to be enforced, upon proper application, and there
be nothing to impeach its fairness and equality, a Court of equity
will not disturb it, although some of the parties were infants at
the time when they joined in the partition.

Amey *vs.* Cockey & Bargar.

Where an infant *féme covert* made a deed, which she sought to disaffirm on the ground of infancy by a bill in equity, filed nearly five years after the disabilities of both infancy and coverture were removed, and the property conveyed by the deed was improved city property, requiring of necessity constant expenditure to keep it in repair. and maintain it in a good, habitable condition, it was HELD :

That she had not exercised her right of disaffirmance within a reasonable time after the removal of her disabilities.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from a decree of the Court below dismissing the bill of complaint, with all proceedings thereunder. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*S. S. Field,* for the appellant.

*Frederick W. Story,* and *Edward Otis Hinkley,* for the appellees.

ALVEY, C. J., delivered the opinion the Court.

The bill in this case was filed on the 15th of December, 1888, by the appellant, for the purpose of having vacated and declared of no effect a certain deed executed by herself and her brother, James Wise, on the 20th day of April, 1848, upon the ground that both she and her brother were infants, under the age of twenty-one years, at the time of the execution of the deed. The deed was made to the mother of the appellant, and it is under the mother that the present appellees, as purchasers, derive their title to the premises conveyed by the deed of the 20th of April, 1848. At the date of this deed just mentioned, the appellant was a married

woman, and her husband joined in the execution of the deed.

It appears that, on March 14th, 1838, Casper Wise, the father of the appellant, conveyed to his sister, Mrs. Southerland, two lots or pieces of property in the City of Baltimore, one being an estate in fee, and the other a leasehold, in trust for the use of his wife, Ellen Wise, for her life, or until her re-marriage, after the death of the grantor, and upon the death or second marriage of the wife, "then for the sole use and benefit of James Wise and Ellen Wise, the children of Casper and Ellen Wise; and in the event of the death of either James Wise or Ellen Wise, the children as aforesaid, without issue, the survivor shall be entitled to the use and benefit of the property aforesaid forever, and for no other use, intent or purpose whatsoever." The grantor died within a month after making the deed, intestate, leaving James and Ellen his only children and heirs-at-law, and his wife Ellen surviving him. His widow, about a year after his death, married Francis Shanabrook, and died in April, 1873. James Wise, the brother of the appellant, was never married, and died in November, 1848, intestate. The appellant was married to Joseph H. Amey in the year 1844, and her husband died on the 3d of January, 1884.

Casper Wise left considerable estate, the most of which consisted of leasehold property in the City of Baltimore. And the property conveyed by the deed of the 14th of March, 1838, seems to have been treated as part of the estate of the deceased, for the purpose of making *equality* in the division thereof among the parties entitled. On the 20th of April, 1848, there appears to have been made a partition and final division of the estate; and upon that date the deed in question was executed. There were two deeds of that date made to Mrs. Shanabrook, for different pieces of property; one of

which was for the lot in fee simple embraced in the deed of trust made by Casper Wise to his sister Mrs. Southerland, in trust for his wife and children. That deed is the subject of the present controversy. There was a deed made to James Wise by his mother and her husband, and the appellant and her husband; and there was also a deed made to the appellant and her husband by the mother and her husband, and James Wise; and all these deeds bear the same date, and appear to be parts of one and the same transaction, and recite the same nominal consideration of five dollars. In the deeds to the mother she is described as being the widow of the late Casper Wise, deceased, and the grantors, James Wise and the appellant, as being the heirs and legal representatives of Casper Wise, deceased; and, in the deed in controversy, they profess to grant all their right and estate, at law or in equity, as heirs-at-law of Casper Wise, deceased, or otherwise, in the property described. And in the deed to James Wise, and also in that to the appellant and her husband, the recitals are quite conclusive of the nature and object of the deeds made by and to the several parties. In the deed to James Wise, to which the appellant and her husband, and the mother and her husband, were parties, it is recited that "whereas, the parties hereto are the heirs and legal representatives of Casper Wise, deceased, and as such have agreed to a division of the estate of said Casper Wise, and have each elected to take certain pieces of property as their respective share of said estate, and to which election and allotment all have assented. And whereas, the ground and premises hereinafter described, was in said division allotted to and accepted by the said James Wise as his share of the estate of his father, the said Casper Wise." And in the deed of James Wise, and his mother and her husband, to the appellant and her husband, similar recitals are made. Shanabrook, the husband of

the widow of Casper Wise, became the guardian of both James Wise and the appellant; and on the 16th of May, 1844, Joseph H. Amey, the husband of the appellant, executed a release to the guardian of his wife; and on the 12th of June, 1847, James Wise executed a release to his guardian, wherein he stated that he was then of legal age, and acknowledged that he had received his property of his guardian. It is alleged in the bill that Mrs. Southerland, the trustee in the deed of the 14th of March, 1838, is long since dead, and that she left no heirs within this State.

The gravamen of the appellant's case, as charged in the bill, is, that by the marriage of her mother, and the death of her brother, she became entitled to an equitable estate in the property conveyed by the deed of trust of March 14th, 1838; and that both of the appellees claim title to the lot or parcel of ground in question, "through and by virtue of a pretended conveyance from the appellant and her husband, Joseph H. Amey, and her brother, James Wise, to Ellen Shanabrook, bearing date April 20th, 1848; whereas, as she charges, at the time of the execution of the said deed, to wit, April 20th, 1848, both she and her brother, the said James Wise, were infants under the age of twenty-one years, and that the pretended deed is of no binding force upon her, and she hereby disaffirms the same."

The appellees, by their answer, put the appellant to full proof of all the material allegations of her bill, and rely upon the defences of laches, and the want of jurisdiction in the Court to render the relief prayed.

In support of her case the appellant was the principal and most material witness, and she was examined and cross-examined at great length. The main fact to which her examination was directed was that of her age; and, in regard to that, we entirely agree with the Court below, that the proof is far from being clear or satisfac-

tory. The burden of proof is upon the appellant, and it is incumbent upon her, in view of the facts of this case, to show beyond reasonable doubt, that the deed she seeks to have vacated and set aside was made at a time when she was under the disability of infancy. That we think she has failed to do, upon the proof as presented by the record. Of course, we say nothing in regard to the additional evidence sought to be introduced after the case had been heard below, and to enable the appellant to introduce which we are asked to remand the cause. Our conclusion is based alone upon the evidence before us. And upon examination of that, it is manifest, from the testimony of the appellant, that all the knowledge she possessed upon the subject of her age had been derived from her aunt, Mrs. Lum, now deceased ; and such knowledge came to the appellant at a comparatively recent date. The entries in the family Bible produced, as to the dates of birth of the appellant and her brother James, were manifestly made years after the occurrence of the events recorded, and this fact is not disputed by the appellant ; and while the Bible came from the possession of Mrs. Lum, there is no evidence to show when, or by whom, or under what circumstances the entries were made. They are therefore entitled to little or no weight as evidence on the question of age. Nor can the statements of Mrs. Lum, contained in the letter produced, dated June 3d, 1880, written to the appellant, at her request, be accepted as in all respects free of doubt. These statements appear to have been made in answer to inquiries of the appellant, having reference to some contemplated litigation ; but whether to this case or some other, does not distinctly appear. Such statements, made under such circumstances, cannot be accredited as satisfactory evidence of the fact sought to be established. And if we do not allow to these statements and the entries in the

Bible sufficient probative force to establish the fact alleged, there can be no claim that the fact of non-age is otherwise sufficiently proved. Indeed, all the circumstances of the case would seem to lead to an opposite conclusion.

But, however that fact may be, in view of the other facts of this case, we think it quite immaterial to the validity of the deed in question. Ordinarily, indeed most generally, a deed of conveyance of an infant is not void, but voidable only; and such deed operates to transmit the title. And in certain cases such deed is not subject to disaffirmance by the infant after he arrives at age. This has been the settled doctrine for ages past. *Zouch vs. Parsons*, 3 *Burr*, 1794, 1804; *Irvine vs. Irvine*, 9 *Wall.*, 617, 626; 2 *Kent Com.*, 242.

In this case, it appears that the several lots or parcels of leasehold property, owned by Casper Wise at the time of his death, were duly appraised, and the appraisement, the lots being of unequal values, was returned to the Orphans' Court; and the aggregate of the appraised values was divided into three equal parts, one of which was distributed to the widow, and the two other parts to the children respectively. This property remained undivided until April, 1848, when it was partitioned in kind, instead of being sold and converted into money. This was a right and proper thing to do under our law; and which the Orphans' Court, or a Court of equity, had power and jurisdiction to direct to be done, even as between adults and infant parties entitled. *Hewitt's Case*, 3 *Bland*, 184; *Williams vs. Holmes*, 9 *Md.*, 281. In making this partition, the lot of ground which had been previously conveyed in trust by Casper Wise, and in which his widow had a right of dower, was conveyed to her, and she, together with her second husband, joined in the assignments of the leasehold estates selected to be taken by the two children. There is nothing alleged

or shown to impeach or call in question in any manner the entire fairness and equality of the partition thus made; and in such case, a Court of equity could hardly be expected to lend its aid in breaking up the partition, after the lapse of forty years, and after the appellant and her husband had received and disposed of their share of the common property, and also that assigned to her brother, who, shortly after the partition, died intestate. Fortunately, the law tolerates no such injustice.

In *Co. Litt.*, 171*a*, Lord COKE, in his commentary upon section 258 of *Littleton*, says: "As before in the case of the *féme covert*, so it is in the case of the enfant; for if the partition be equal at the time of the allotment, it shall binde him forever, because he is compellable by law to make partition, and he shall not have his age in a *partitione facienda;* and though the partition be unequal, and the infant hath the lesser part, yet is not the partition void but voidable by his entry; for if he take the whole profits of the unequal part, after his full age, the partition is made good forever."

In the celebrated case of *Zouch vs. Parsons*, 3 *Burr.*, 1794, 1801, where the question was, whether an infant's conveyance by lease and release was absolutely void, or only voidable, Lord MANSFIELD expounded fully the reasons of the disability and privilege of infancy, and pointed out the instances wherein that privilege was not available. In the course of his learned judgment he said: "If an infant does a *right* act which he *ought* to do, which he was compellable to do, it shall bind him; as if he makes *equal partition;* if he pays rent; if he *admits a copyholder* upon a surrender. But there is no occasion to enumerate instances; the authorities are express; and the reason decisive. Generally, whatsoever an infant is bound to do by law, the same shall bind, albeit he doth it without suit at law." And further on he says: "A *right*

and *lawful* act is *not within the reason of the privilege;* which is given to *protect* infants from *wrong.* His being compellable by *any* means, or in *any* way to do it, proves the act to be *substantially what he ought to do."* The doctrine of that case has been repeatedly recognized as law in this country, and, as said by Chancellor KENT, is not now to be shaken. 2 *Kent Com.,* 236. And in 2 *vol. Kent's Com., page* 242, it is laid down as text law, that "Whatever an infant is bound to do by law, the general rule is, that the same will bind him if he does it without suit at law. If, therefore, he be a tenant in common, he may make a *reasonable partition.* He may discharge a mortgage on due payment of the mortgage debt. His acts as executor, at the age of seventeen, will bind him, unless they be acts which would amount to *devastavit.* There was no occasion, said Lord MANSFIELD, to enumerate instances. The authorities are express, that if an infant does a *right act,* which he ought to do, and which he was compellable to do, *it shall bind him."* Here, the partition that was made was such as a Court of equity had ample power and jurisdiction to sanction and require to be enforced, upon proper application (*Hewitt's Case, supra; Williams vs. Holmes, supra*); and the parties having made the partition among themselves, and there being nothing to impeach its fairness and equality, a Court of equity will not disturb it.

But apart from the principle just stated, and assuming that the appellant was under age at the date of the deed in question, there is still another ground upon which the relief prayed should be refused; and that is her unreasonable delay in attempting to disaffirm the deed after the disabilities of both infancy and coverture were removed. Her husband died on the third of January, 1884, and the present bill was not filed until December 15th, 1888—a delay of five years, wanting a few

days. It is true, having executed the deed, as she alleges, when she was under the double disability of infancy and coverture, (and before the adoption of any enabling statute,) she could not be required to do any act in disaffirmance of the deed until those disabilities were removed. But from the time of the removal of such disabilities she was required to take action for the disaffirmance of the deed *within a reasonable time.* In 2 *Bishop on Married Women, sec.* 516, it is stated as the settled law, that if an infant, who is also a married woman, makes an instrument voidable because of her infancy, the disability of coverture enables her to postpone the act of avoidance to *a reasonable time* after the coverture is ended. And this is held to be the true and reasonable doctrine by the Supreme Court of the United States, in the case of *Sims vs. Everhardt,* 102 *U. S.,* 300, 310. What is a reasonable time in such cases is a question in regard to which the authorities are not uniform; but the decided weight of them is to the effect that the time must be reasonable in respect to the special circumstances of each case. Here the property is city improved property, and from necessity must require constant expenditure to keep it in repair, and to maintain it in a good habitable condition. To allow any very long time within which disaffirmance could be made would lead either to the dilapidation of the property, or to entrapping the purchaser into an expenditure for improvement that might result in a total loss to him. No unqualified or extended rule, therefore, should be adopted that could lead to such consequences. There are many well considered cases where the time within which disaffirmance was attempted was less than in this case, and yet the time was, under the circumstances, adjudged to be too great to justify the interference of the Court.

In the view taken by this Court of the various points or questions presented by the record, it becomes quite

unnecessary to consider the proposition urged by the appellant, for the remand of the cause, under section 36, of Art. 5, of the Code, to enable her to supply further or additional proof of her minority at the time of the execution of the deed in question; as in no aspect of the case could she be entitled to the relief prayed. The decree appealed from will therefore be affirmed.

*Decree affirmed.*

(Decided 16th January, 1891.)