JAMES M. HOFFA, ET AL. *v.* HARRY E. HOUGH,
ET UX.
EDWIN P. FELLENBAUM *v.* JAMES M. HOFFA,
ET AL.

[Nos. 15 and 32, January Term, 1943.]

*Decided March 16, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, GRASON, and MELVIN, JJ.

*Michael F. Delea,* with whom were *James M. Hoffa* and *R. E. Lee Young* on the brief, for the appellants in No. 15 and appellees in No. 32.

*George A. Mahone* and *N. Irvin Gressitt* for the appellees in No. 15 and appellants in No. 32.

DELAPLAINE, J., delivered the opinion of the Court.

Ella F. Atkinson, of Baltimore, made a deed in 1927 conveying two mortgages (the first for $5,200, and the second for $1,000, both given by Harry E. Hough and wife on a property in Baltimore) to Rev. Edwin P. Fellenbaum and Mary Virginia Fellenbaum, his wife, in trust for herself for life, and after her death (1) one-half thereof for the use of her sister, Matilda Heiss, for life, and thereafter to her brothers, James L. Frankland, Charles E. Frankland and Le Roy Frankland, and (2) one-half for the use of her sister, Mary Virginia Fellenbaum, for life, and thereafter in trust for her son, Edwin Frankland Fellenbaum, until he reached the age of thirty-five years, and then to him absolutely. The deed of trust was revocable. The settlor reserved the

power to convey, release or otherwise dispose of the property. In 1928 she released both mortgages by short form, but took in lieu thereof one mortgage for $6,200 from the same mortgagors on the same property.

The question before the court is whether Mrs. Atkinson revoked the trust. She died on June 21, 1929. After her two surviving sisters, five brothers, and the children of three deceased brothers learned of the deed of trust, all except a nephew, Arthur Frankland, a resident of West Virginia, and his sister, Bessie O'Rear, now deceased, waived claim to any distributive share in the estate as next of kin. In 1932, the mortgagors, who had defaulted in the mortgage payments, offered to relinquish their equitable interest in the property, if the trustees would cancel the mortgage debt. The trustees accepted the proposal, and authorized N. Irvin Gressitt, who had been for many years Mrs. Atkinson's attorney, to prepare a deed for the equity of redemption. After the deed was approved by John J. Pratt, attorney for the mortgagors, it was executed by them. Mrs. Fellenbaum, co-trustee and one of the life tenants, died in 1933. Mrs. Heiss, the other life tenant, died in 1934. In 1938 Rev. Fellenbaum, acting as trustee for his son, purchased the one-half remainder interest of James L. Frankland, Charles E. Frankland and Le Roy Frankland by cash settlement of $1,500.

In December, 1941, more than twelve years after Mrs. Atkinson's death, James H. Hoffa and R. E. Lee Young, attorneys, were appointed administrators of her estate; and in January, 1942, the administrators petitioned the Circuit Court of Baltimore City for a decree directing foreclosure of the property. The court appointed Michael F. Delea, attorney, as trustee to make the sale. Rev. Fellenbaum, surviving trustee, filed an intervening petition to enjoin the sale. The chancellor decreed that the mortgage was not impressed with the trust. He enjoined the foreclosure sale, however, upon the payment by Rev. Fellenbaum of the sum of $550, determined to be the

value of the interests of Arthur Frankland and the estate of Bessie O'Rear, deceased, and the filing of a bond in the penalty of $1,000 to pay any possible debts of Mrs. Atkinson's estate and the costs in these proceedings and in the Orphans' Court.

The law is well established that where a settlor has reserved the power to revoke the trust, but has not specified any mode of revocation, the power can be exercised in any manner which sufficiently manifests the intention of the settlor to revoke the trust. Any definite manifestation by a settlor of his intention to revoke the trust is sufficient. While a settlor ordinarily manifests his intention to revoke by communicating his decision to the trustee, it is not absolutely necessary that the trustee should receive such a communication. *Lambdin v. Dantzebecker,* 169 Md. 240, 248, 181 A. 353; 2 *Restatement of Trusts,* Sec. 330. Where, for illustration, a settlor retains the power to sell certain property subject to a trust, and later conveys the property to some one else, the conveyance itself is an implied revocation of the trust, as the trustee and the *cestui que* trust are divested of all interest in the property. *O'Brien v. Holden,* 104 Vt. 338, 160 A. 192, 196; *Sims v. Brown,* 252 Mo. 58, 158 S. W. 624, 628. Similarly, in *Gaither v. Williams,* 57 Md. 625, where the grantors in a deed of trust reserved the power of revocation as to certain property, but subsequently placed mortgages on the same property, it was held by this court that the mortgages operated as a revocation of the trust, although no mention was made of the power of revocation.

But it has also been held that a trust is not revoked by any conveyance or act which is consistent with its continued existence. *Patterson v. Johnson,* 113 Ill. 559; *Reel v. Hansboro State Bank,* 52 N. Dak. 182, 201 N. W. 861, 866. In the present case no money passed between Mrs. Atkinson and the mortgagors when the new mortgage was given. There was no change in the investment, because the new mortgage became a security for the

original indebtedness. The only change was the giving of one mortgage providing for amortization in place of two standing mortgages. We believe this substitution was not inconsistent with the declaration of the trust. The Court of Appeals has adopted the general rule, as stated by Chief Judge Boyd, that the duration of a trustee's estate is measured by the substantial objects and purposes of the trust, and not by the technical form of the words creating it. *Lyon v. Safe Deposit & Trust Co.,* 120 Md. 514, 532, 87 A. 1089, 1096. Where a trust has been created by a written instrument, carefully drafted in unequivocal language, executed under seal, verified by affidavit, and duly recorded, a court of equity cannot hold that a mere change in form operates as a termination of the trust, when there are no acts or declarations showing clearly and unmistakably an intention to revoke. Moreover, when Rev. Fellenbaum received a deed for the property from the mortgagors after Mrs. Atkinson's death, the property continued subject to the trust, since the deed of trust expressly provided that it embraced not only the two specified mortgages but "any other property that may hereafter be substituted therefor."

The administrators laid stress on the fact that Mrs. Atkinson wanted the new mortgage in her own name, and not in the names of the trustees. But we must observe (1) that the old mortgages were also in her own name, and (2) that she reserved in her deed of trust the right to collect all interest, rents, and other income from the trust estate. Furthermore, it does not seem likely that Mrs. Atkinson, who was inexperienced in law and business, would have made a change in the devolution of her entire estate without consulting her own lawyer. Of course, before deciding whether a settlor intended to exercise the power of revocation, the court should consider all the circumstances which tend to show a change of purpose or feeling. Mrs. Atkinson had no other property which would necessitate administration in the Orphans' Court, and she created the trust to provide for

her favorite relatives. There is no evidence to show that she had any reason to change the objects of her bounty. In fact, Pratt admitted on the witness stand that the only reason why the new mortgage was given was to accommodate the mortgagors. When he was asked directly whether Mrs. Atkinson wanted to change the mortgages from a trust to an individual holding, he said: "The purpose of changing this mortgage was that there were two mortgages outstanding, and the parties agreed that there would be one mortgage for the same amount, which was to be paid in installments." He declared that he knew of her deed of trust, and called it to her attention. Yet when he was urged to tell why he had made no mention of the trust in the mortgage, he said: "Just probably an oversight. That is all I can say about it." He also admitted that he could not explain why the mortgagor's deed to the trustees, which he had carefully examined and approved, recited that it was not contemplated by any of the parties that the character of the mortgagee's title should be changed by the new mortgage.

Since there was no act or declaration of the settlor showing that she intended to revoke the trust, the conclusion is inevitable that the property in dispute is subject to the trust. Another ground on which the administrators are barred from relief in equity is the unreasonable delay of Arthur Frankland and his sister, now deceased, in claiming a distributive share in the estate. Frankland knew of his aunt's death in 1929, ignored all the notices from the trustees, waited for twelve years before asserting his claim. It is a fundamental doctrine that a court of equity will not give aid to a claimant who has slept on his rights for an unreasonable and unexplained length of time, thereby suffering his claim to become stale and causing prejudice to an adverse party. Such manifest neglect constitutes an implied waiver arising from a knowledge of the conditions and an acquiescence in them. *Chew v. President, Etc.,*

of *Farmers' Bank of Maryland,* 2 Md. Ch: 231, 251; *Demuth v. Old Town Bank,* 85 Md. 315, 326, 37 A. 266, 268, 60 *Am. St. Rep.* 322. Hence, a party will be barred by laches when it is shown that he remained passive while an adverse claimant made expenditures over a long period of time for improvements to the property in dispute and paid taxes thereon in reliance upon his own rights. Rev. Fellenbaum testified that he paid about $450 for taxes in arrears, and continued to pay about $150 a year for taxes, and also spent about $500 for roofing, painting, heating and repairs, and about $150 to put in a sewer. To allow a claimant to wait twelve years before asserting his claim in a case like this would lead either to the dilapidation of the property or the entrapment of an innocent person into expenditures which might result in a total loss to him. *Amey v. Cockey,* 73 Md. 297, 306, 20 A. 1071, 1073.

> *Decree reversed, and foreclosure petition dismissed, the costs to be paid by appellants in No. 15 and by appellees in No. 32.*