DREISONSTOK, Trustee *v.* HOFFMAN et al.

[No. 90, October Term, 1955.]

*Decided February 13, 1956.*

Submitted on briefs to BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Kelley Litteral, Edward L. Foster* and *Robert R. Boyer,* on brief for appellant.

*Joe V. Morgan, Jr.,* on brief for appellees, Alvin Peck and Stella Peck.

*Louis M. Denit, Thomas S. Jackson* and *David S. Scrivener,* on brief for appellees, William Cohen, Rosalie Cohen, Charles Cohen, Freda Cohen and Perpetual Building Association.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Lloyd H. Dreisonstok, appellant, who was appointed on April 18, 1950, trustee in bankruptcy for Henry I. Hoffman, from a decree dated June 17, 1955, dismissing his bill of complaint with costs. The bill of complaint was filed against Henry 1. Hoffman and Flora Hoffman, his wife; Alvin Peck and Stella Peck; William Cohen and Rosalie Cohen; Charles Cohen and

100

Freda Cohen; D. & L., Inc., a Delaware corporation; Louis Ottenberg, surviving trustee; and Perpetual Building Association, appellees.

Henry I. Hoffman and Flora Hoffman purchased the property now in question know as 8025 Georgia Avenue, Silver Spring, Maryland, on October 9, 1943. They held title to this property until January 31, 1946, when they conveyed it to Toll Road Laundry, Inc., (Toll Road). The consideration for the sale by the Hoffmans to Toll Road was $150,000.00. Hoffman testified that he thought he collected from the sale $1,000.00 to $1,200.00 in cash. This property at that time was subject to the lien of a first trust in the amount of $60,000.00 to Suburban National Bank. Toll Road on January 31, 1946, executed a $60,000.00 deed of trust securing two notes in the amounts of $25,000.00 and $35,000.00 to the Suburban National Bank to take the place of the former deed of trust in that amount to that Bank. On the same date Toll Road gave a second deed of trust in the amount of $80,000.00 to Maurice Freedman and Louis Ottenberg, trustees, securing a note given Henry I. Hoffman and Flora Hoffman. This note was guaranteed to the extent of $25,000.00 by John F. Markel, who was President of Toll Road.

Toll Road held the property subject to the aforesaid deeds of trust until early in 1948. At that time it went into bankruptcy and its assets were then vested in M. Taft Woodruff, trustee in bankruptcy for Toll Road. During 1948 Mr. Woodruff endeavored to sell the property.

In the summer of 1948 Alvin B. Peck and Stella Peck, the son-in-law and daughter of Henry I. Hoffman and Flora Hoffman, and Jack Coopersmith formed a Delaware corporation known as D. & L. Inc. All of the stock, two hundred shares, was originally issued to Alvin Peck, Stella Peck and Jack Coopersmith. Peck testified that he formed the corporation for the purpose of purchasing the property from Toll Road. About two days after the corporation was formed Peck said he transferred one hundred shares of stock of this corporation to Hoffman

in consideration of Hoffman's release of the $80,000.00 deed of trust aforesaid.

On August 17, 1948, the referee in bankruptcy passed an order authorizing the trustee to sell the property to D. & L. Inc. for $3,000.00 subject to liens of $131,955.50. This sale was ratified. The deed was not executed until March 28, 1949. On that same date D. & L. conveyed the property to Alvin and Stella Peck, who in turn that same day conveyed a one-half interest to Charles Cohen and Freda Cohen, William Cohen and Rosalie Cohen. On the same date, March 28, 1949, the Pecks and the Cohens executed a deed of trust to the Bill White Investment Corporation for $16,000.00. The charter of D. & L. was cancelled on April 1, 1952, for non-payment of taxes.

On March 17, 1950, Henry I. Hoffman filed a voluntary petition in bankruptcy in the United States Court for the District of Columbia. He listed among his assets the $80,000.00 note given to him and his wife by Toll Road and on which there was an endorsement by Markel guaranteeing the first $25,000.00 of this $80,000.00 note. The note had written across its face in ink: "paid and canceled 3/28/49, D. & L. Inc. by Henry I. Hoffman, President." He also listed among his assets one hundred shares of stock in D. & L. Inc. as of no value.

Louis Ottenberg, as surviving trustee of the $80,000.00 deed of trust dated January 31, 1946, to the Hoffmans, released that deed of trust on March 14, 1952. For the purposes of refinancing on March 3, 1952, the Pecks and the four Cohens executed a deed of trust to secure the Perpetual Building Association for the sum of $57,-500.00. This lien was still unpaid at the time of the hearing below. On March 27, 1952, the $16,000.00 deed of trust securing Bill White Investment Corporation was paid and released, and on March 31, 1952, the $60,000.00 deed of trust securing the Suburban National Bank was paid and released.

The appellant in this case asks that the defendants be restrained from conveying or encumbering the property

herein. He further asks that the deed from D. & L. Inc. on March 28, 1949; the release of the $80,000.00 deed of trust made by Louis Ottenberg on March 14, 1952; and the cancellation of the $80,000.00 note all be set aside and declared null and void. He further asks that the deed of trust from the Pecks and Cohens to Perpetual be declared subordinate to the $80,000.00 deed of trust originally given to the Hoffmans. He further asks that the Hoffmans, the Pecks and the Cohens account for the rents received since March 28, 1949, and that a judgment be entered for that rent.

The chancellor, who saw and heard the witnesses, here found that the deed of trust to Perpetual should not be declared subordinate to the $80,000.00 deed of trust originally given to the Hoffmans as there was no fraud on its part. With this finding we agree. Perpetual actually loaned the sum of $57,500.00 for the purpose of discharging the prior liens of Suburban National Bank and Bill White Investment Corporation. It was, of course, charged with knowledge of the record of the $80,000.00 deed of trust which had not then been released on the record. However, it knew through a title company that the $80,-000.00 note secured by that deed of trust had been marked "paid and canceled" and that the deed of trust was in the process of being released by the surviving trustee. This is substantiated by the fact that the $80,000.00 deed of trust was actually released of record eleven days after Perpetual's deed of trust was recorded. Perpetual knew of no alleged fraud. Of course, in alleging fraud, the burden is upon the party who alleges it, to set aside a contract executed or partly executed, to establish the alleged fraud by clear and indubitable proof. This power ought not to be exercised except in a clear case of fraud and unless the complainant has been deceived and injured thereby. *Cox v. Tayman*, 182 Md. 74, 80, 32 A. 2d 368, and cases there cited. There was no such proof here.

The chancellor further found that there was no fraud on the part of the Cohens. There is not the slightest evidence that they committed any fraud. They put up

substantial amounts of money and had no knowledge of any alleged fraud.

The chancellor also found that the Pecks had dealt in good faith in the matter and there was no fraud on their part. With this finding we agree. They had a natural interest in the welfare of Hoffman, Mrs. Peck's father. Peck said he entered into an agreement with his father-in-law, Hoffman, to convey to him fifty percent of the stock of the D. & L. corporation. This was done in July of 1948, about two days after the corporation was formed. As consideration for this stock Hoffman and Peck say that Hoffman agreed to exchange his $80,000.00 deed of trust on the property for the one hundred shares of stock in D. & L. Inc. Hoffman testified that he surrendered this deed of trust one day after the $3,000.00 was paid to the trustee in bankruptcy. However, this deed of trust was not released by Louis Ottenberg, the surviving trustee for Hoffman, until March 14, 1952, in an attempt to preserve the personal guarantee of Markel as to $25,000.00 thereof. This note at the time of trial had written across its face in ink as aforesaid stated: "paid and canceled 3/28/49, D. & L. Inc. by Henry I. Hoffman, President." Hoffman, therefore, owned one hundred shares, fifty percent of the stock of D. & L. Inc.; the Pecks ninety-eight shares, forty-nine percent; and Jack Coopersmith two shares, one percent. Peck further testified that he invested $7,000.00 in the corporation. $3,000.00 was paid to the trustee in bankruptcy for Toll Road and $150.00 was paid as costs for incorporation. The balance was used for new equipment and operating expenses. There is no evidence that the Pecks conspired together to defraud Hoffman's creditors. Had they not come to Hoffman's rescue in 1948 by forming the D. & L. corporation, the first deed of trust to Suburban National Bank would have been foreclosed, as threatened, and Hoffman and his creditors probably would have lost everything then.

As to Hoffman, he came out of all of these transactions with practically nothing. He had lost the property, his

trucks had been repossessed, and the machinery which he had taken out of the property was worth so little that it had been abandoned by the trustee in bankruptcy. The chancellor found that Hoffman's one act which might be criticized was the release on March 28, 1949, of the Toll Road note. No punitive action is here sought against Hoffman. The chancellor found from the evidence that the note had little or no value. With that finding we agree. At the time the D. & L. was formed Toll Road, the maker of the deed of trust and the note, was bankrupt. The first trust to Suburban National Bank was in default with foreclosure threatened. At the hearing it was not shown that Markel's endorsement added anything to the value of this note. The trustee had made no effort to collect from Markel. There is no convincing evidence here that anyone would purchase it or that it had any value. Although this note was listed in the bankruptcy schedule, the trustee waited three years before bringing this suit.

The appellant here asks this Court to upset large transactions. If Mr. Barney H. Kraft, President of Southern Venetian Blind & Awning Corporation, who has leased this property for ten years, unaware of any alleged fraud, is reimbursed in the amount of $32,000.00 for the improvements which in good faith he made to the property; if the Cohens and Pecks are paid back the amounts which they invested in the property; and all other liens made in good faith are paid, it is very doubtful whether there would be any value to the $80,000.00 second trust which the appellant asks us to reinstate.

In the bankrupt estate the total amount of claims proven, the time for proving claims having now expired, is $7,500.00. The appellant, when asked, more than four years after the institution of the bankruptcy proceedings and at least three years after all unfiled claims were barred, whether one of the claims, included in the $7,500.00, was barred by the Statute of Limitations, replied: "I haven't made a complete examination of the claims filed at this time. I just glanced through them—not for

the purpose of determining whether they are allowable or not." Hoffman filed his petition in bankruptcy on March 17, 1950, and the appellant was appointed bankrupt trustee on April 18, 1950. At a meeting on September 30, 1953, before the Bankrupt Referee, the appellant had not taken possession of the records of the bankrupt. The excuse given by him for not doing this was that these records were bulky, "voluminous and not in any sort of order." Many of these records have now been destroyed. The Referee chided the trustee for his laxity in this regard. The laxity of the trustee is further shown by the fact that, although he was appointed trustee of the bankrupt on April 18, 1950, and the $80,000.00 note was listed among Hoffman's assets, he did not bring this action until March 27, 1953. Mr. Kraft leased the property here in question on January 1, 1950, for a period of ten years. Since that time he has, in good faith, spent approximately $32,000.00 for repairs and improvements of the building, without any knowledge on his part that there was any claim here of alleged fraud. The Perpetual Building & Loan Association has loaned $57,500.00 on the property without any knowledge of the alleged fraud. Other liens have been paid off and released. If the appellant had proceeded with reasonable diligence, the parties here involved would have been aware of his claim of fraud and an equitable interest in the property, and would have avoided their transactions. The Pecks and Cohens, who had no knowledge of the alleged fraud, have put substantial sums in the property, have obligated themselves to Perpetual, and have paid off the Suburban National Bank and the Bill White Investment Corporation. The appellant now asks that these transactions be set aside and made subordinate to the $80,000.00 deed of trust originally given to the Hoffmans. It is a well known principle that under the doctrine of laches a court of equity refuses to grant relief to a complainant who has slept on his rights for an unreasonable length of time, thereby allowing his claim to become stale and causing prejudice to the adverse party. There is no inflexible

rule as to the length of time, such as in the case of limitations, but the court must decide the question from all the facts and circumstances in each particular case. This principle is based in part on the policy to give repose to titles. *Hoffa v. Hough*, 181 Md. 472, 477, 478, 30 A. 2d 761; *Croyle v. Croyle*, 184 Md. 126, 139, 40 A. 2d 374; *Grandberg v. Bernard*, 184 Md. 608, 42 A. 2d 118; *Plitt v. Kaufman*, 188 Md. 606, 615, 53 A. 2d 673; *Berman v. Leckner*, 193 Md. 177, 187, 66 A. 2d 392; *Bradley v. Cornwall*, 203 Md. 28, 39, 40, 98 A. 2d 280; *Sinclair v. Weber*, 204 Md. 324, 337, 104 A. 2d 561.

There appears no excuse for the delay in bringing the action here. There is no doubt that such delay would cause great prejudice to the adverse parties if the relief prayed is granted. This is peculiarly a case in which the doctrine of laches should apply. The decree will be affirmed.

*Decree affirmed, with costs.*