FULLER et al. v. MONTAGUE et al.

(Circuit Court, E. D. Tennessee, S. D.		December 8, 1892.)

LACHES—WHAT CONSTITUTES—TIME OF DELAY.

> Certain town lots were purchased in 1839 by F. and P., and were conveyed to them jointly. The deed was duly recorded. F. made his copurchaser his agent to take care of the property. In 1844 P. conveyed, without F.'s knowledge, the entire title to the lots, the deed being recorded in 1851. F. died in 1846. The lots were subsequently conveyed to innocent third parties. In a suit brought in 1892 by the heirs at law of F. to have their interest in the property established, it appeared that the original deed was discovered in 1887; that complainants were not altogether ignorant of the existence of their rights prior to this discovery, or of the several transactions connected with the property; and that they had opportunity for investigation. *Held,* that complainants were guilty of laches barring a recovery.

In Equity. Bill by John P. Fuller and others, heirs at law of Simeon Fuller, Jr., against T. J. Montague and others to establish an interest in certain lands, and to have the same partitioned. Heard on demurrers and motions to dismiss the bill. Bill dismissed.

Wells & Body, for complainants.

Wheeler & McDermott, Eakin & Dickey, and W. G. M. Thomas, for defendants.

KEY, District Judge. The bill alleges that complainants are the heirs of Simeon Fuller, Jr., who died in 1846; that in 1839 Fuller and his brother-in-law, Moses Pressly, purchased and had conveyed to them several town lots in Chattanooga jointly, and the deed was duly registered. The bill states that the register's office clearly shows complainants' title, and has given notice to the world that Fuller's title to these lots has never passed from or been divested out of him or his heirs. It is alleged that Fuller made Pressly his agent to take care of this property, pay taxes on it, etc.; that in 1844, two years before the death of Fuller, Pressly conveyed, or purported to do so, the entire title to these lots to one Whitley, in betrayal of the trust reposed in him, and that the deed was withheld from registration until 1851, so that possession might perfect the title before knowledge of the conveyance should be given, but it was registered in 1851. These various transactions, it is alleged, were concealed fraudulently from complainants and their ancestor until 1887, when complainant John P. Fuller, in searching through his Uncle Pressly's papers, found the original deed which conveyed the lots to Fuller and Pressly, and, finding no deed conveying his father's interest to Pressly, he suspected fraud, "and his reflections led to investigation."

The bill is not filed against the wrongdoers, Pressly or Whitley, their heirs, representatives, or estates, but against the present claimants of the lots, and seeks to have complainants declared entitled to an undivided interest of one half in the lots, and to have the lots partitioned. The bill does not charge fraud upon the defendants, but claims that the register's books give them notice of complain-

ants' title. It is true that the prime object of our registration laws is to give notice to those who may purchase lands as to the character of title, and whether there are other and better titles than that which they propose to purchase, yet when parties know, or have reason to believe, that they or those under whom they claim have or have had title to lands, the register's books would be the repository which they would examine to ascertain how their interests may appear. It is true that complainants rather feebly allege that they had no knowledge of the existence of their interests until the original deed was discovered, but in another part of their bill they assert that their uncle told them that he had owned lands together with their father, but that before his death their father had sold them all to him. Again, we find the following language in regard to what Fuller, the ancestor, said:

"And in his last illness, and when death approached, [he] expressed his assurance that his brother-in-law and cotenant, Pressly, would care for and preserve the investment in and about Chattanooga so that it might be profitable by the time his three children (your orators) should grow up."

This was in 1846, and evidently this deathbed announcement has been all along known to complainants. At all events, they do not show that their knowledge of their father's expression is of recent occurrence. We have, then, the uncle's announcement that he and the elder Fuller had owned lands jointly, but that Fuller had sold out to him, and we have Fuller's express deathbed declaration that he had lands in and about Chattanooga, and that he hoped that they might become valuable by the time his children should be grown, and we have the deed to Pressly and Fuller and the deed to Whitley both registered in or near Chattanooga, and yet are told that complainants have been diligent.

Chattanooga is within four miles of the Georgia line, and is the terminus of the Western & Atlantic Railroad, and that road is the property of the state of Georgia. So that complainants have not been in such remote and inaccessible distance from their property. There is no charge of fraud, except that perpetrated by complainants' uncle, the agent chosen and empowered and indorsed as such by their ancestor. Their own selected representative, clothed with power and indorsed as honest and worthy of confidence by the ancestor of complainants, according to their bill, has defrauded them under such circumstances that equity gives them superior claim over the defendants who have not participated in the fraud. Why should they who are in no wise responsible for the agent suffer, in preference to him who selected the agent, and gave him opportunity? For complainants occupy no better condition than their ancestor. They stand in his shoes. More than 50 years ago these lots were acquired by Fuller and Pressly. Five years after they were conveyed by Pressly to Whitley, two years before Fuller's death. The first deed has been registered for 53 years; the second, 41 years. The registration of the last deed is not compatible with the theory of concealment, but, on the contrary, gave notice to the world of the transaction. Complainants are over 50 years old, and have not been ignorant, altogether, of these transactions. Moreover, they admit

that in 1887 they became cognizant of their uncle's alleged fraud; and yet they waited until November 1, 1892, a period of five years and upwards, perhaps, before this bill was filed. When the original deed was discovered it furnished the evidence of its registration. Diligence would have plainly indicated that the registration books in Chattanooga be examined to show how the title appeared. The deed of Pressly to Whitley would have at once been discovered, and the reflection of complainants, which they say produced investigation, was unnecessary. Their want of diligence in this is a circumstance we may look to for what preceded. It is apparent that the statute of limitations, according to complainants' own theory, began to run in 1844, and continued to run until the death of Fuller, two years. His children were minors and had three years after arriving at their majority to bring suit. Suppose that they were fraudulently kept in ignorance of their rights until 1887. They would have three years from that time to bring suit before the bar of the statute would have been complete. But they waited for more than five years. But suppose everything up to 1887 was as complainants insist. It was a want of diligence on their part, in such a claim, to wait for five years and more to assert their claim.

It seems clear that complainants have been guilty of such laches that they cannot recover, and that they are barred, also, by the statute of limitations, and that these facts appear on the face of the bill. The demurrers and motions to dismiss will be sustained, and the bill dismissed.