(104 N. W. 848.)

---

P. P. SPOONHEIM AND ANNA SPOONHEIM v. HALVOR P. SPOONHEIM.

Opinion filed June 21, 1905.

**Deed — Validity — Intoxication of Grantor.**

1. A deed is voidable if the grantor at the time of executing it was so intoxicated as to be incapable of understanding the nature and effect of the transaction.

**Cancellation of Instruments — Ratification.**

2. The grantor in such cases must move promptly and within a reasonable time after the intoxication ceases and knowledge of the transaction has come to him, or he has notice of facts sufficient to put him upon inquiry, or he will be deemed to have ratified the deed.

**Same — Unreasonable Delay.**

3. An unexplained delay of nearly seven years before commencing an action to set aside the deed is unreasonable, especially in view of the fact that the land has materially increased in value.

Appeal from District Court, Steele county; *Pollock, J.*

Action by P. P. Spoonheim and Anna Spoonheim against Halvor P. Spoonheim. Judgment for plaintiffs, and defendant appeals.

Reversed.

*J. A. Sorley,* for the appellant.

Intoxication so deep and excessive as to deprive one of his under-standing is a good defense to an alleged contract made while the defendant is in that condition. 14 Cyc. 1103; 17 Am. & Eng. Enc. Law, 401; Story Eq. Jur., section 231; Wilcox v. Jackson, 1 N. W. 513; Caulkins v. Fry, 35 Conn. 170; Wright v. Fisher, 32 N. W. 605; Van Wyck v. Brashear, 81 N. Y. 260; Peck v. Cary, 27 N. Y. 9; 28 Am. & Eng. Enc. Law (2d Ed.) 85, and note and cases cited; Young v. Lamont, 57 N. W. 478; Burnham v. Burnham et al., 97 N. W. 176; Schuur v. Rodenback, 65 Pac. 298; Warvelle on Vendors (2d Ed.), section 75; Bush v. Breing, 6 Atl. 86; In re Schusler v. Estate, 47 Atl. 966; Foot v. Tewksburg, 2 Vt. 97; Bates v. Ball, 76 Ill. 108; Schackelton v. Sebree, 86 Ill. 616; O'Connor v. Rempt, 29 N. J. Eq. 156; Dixon v. Dixon, 22 N. J. Eq. 91; Lofthus v. Maloney, 16 S. E. 749; Taylor v. Purcell, 31 S. W. 567; Gardner v. Gardner,, 34 Am. Dec. 345; Coombe's Exr. v. Carthew, 43 Atl. 1057; Wright v. Walker, 54 L. R. A. 440.

Deed made in a sober interval by an habitual drunkard is good. Ritter's Appeal, 59 Pa. St. 9; Ralston v. Turpin, 25 Fed. 7.

Neither fraud or undue influence is presumed. They must be shown by satisfactory evidence. Heyrock v. Surerus, 9 N. D. 28, 81 N. W. 36; Burnham v. Burnham et al., 97 N. W. 176; Bumpus v. Bumpus, 26 N. W. 410; Wilcox v. Jackson, 1 N. W. 513; Franks v. Jones, 17 Pac. 663; Crane v. Conklin, 1 N. J. Eq. 346.

Where intoxication is induced by the other party. Brummond v. Krause et al., 80 N. W. 686; Peckham v. Van Bergen, 8 N. D. 595, 84 N. W. 566; Story Eq. Jur., section 231; Trimbo v. Trimbo, 47 Minn. 389; Pom. Eq. Jur., section 946.

Assuming plaintiff's intoxication as alleged, the transaction was voidable only. Johnson v. Harmon, 94 U. S. 371; 24 L. Ed. 271; Carpenter v. Rogers, 28 N. W. 156.

Accepting the benefits of a transaction is equivalent to a consent to all the obligations arising from it, so far as are known, or ought to be known to the person accepting. 9 Am. & Eng. Enc. Law, 124; 18 Am. & Eng. Enc. Law, 102; Warvelle on Vendors (2d Ed.) 101; Joest v. Williams, 42 Ind. 565; Pom. Eq. Jur., sections 820, 897; Wright v. Fisher, 32 N. W. 605; Youn v. Lamont, 57 N. W. 478; O'Connor v. Rempt, 29 N. J. Eq. 156; Whitcom et al. v.

Hardy, 76 N. W. 29; Bumpus v. Bumpus, 26 N. W. 410; Pom. Eq. Jur. 965.

*Guy C. H. Corliss*, for respondents.

Where the relation of mortgagor and mortgagee exists and the latter receives title to the mortgaged property by a subsequent conveyance, the mortgagee has the burden of showing the transaction is in all respects fair. Linnellinnel v. Lyford, 72 Me. 283; Ritchie v. McMulten, 79 Fed. 522; Peugh v. Davis, 96 U. S. 332, 24 L. Ed. 775; Moeller v. Moore, 50 N. W. 396; Baugher v. Merryman, 32 Md. 192; Odell v. Mantrose, 68 N. Y. 499; Niggeler v. Maurin, 24 N. W. 369; Marshall v. Thompson, 39 N. W. 309; DeLancy v. Finnegan, 90 N. W. 387; Russell v. Southard, 12 How. 139, 13 L. Ed. 927; Hyndman v. Hyndman, 19 Vt. 10; Hall v. Hall, 44 Am. St. Rep. 696; Bradbury v. Davenport, 46 Pac. 1062; Jones v. Foster, 51 N. E. 862; Seymour v. Mackay, 18 N. E. 552; Scanlan et al. v. Scanlan, 25 N. E. 652; Cassem v. Heustis, 94 Am. St. Rep. 164; Alexander v. Rodriquez, 12 Wall 323, 20 L. Ed. 407; Cassem v. Heustis, 94 Am. St. Rep. 160; Dougherty v. McColgan, 6 Gill & J. 275.

The deed should be set aside on the ground of surprise. 1 Story Eq. Jur., sections 118, 120, 251; 2 Pom. Eq. Jur., section 847; Coffman v. Lookout Bank, 40 Am. Rep. 21; Graffam v. Berhess, 117 U. S. 180, 29 L. Ed. 938.

While a deed is only voidable where the grantor has some intelligence left, yet, if intellectual powers are gone, whether through insanity, idiocy, disease, or cripplings of old age, or temporarily through the use of intoxicants and drugs, the deed is void because there is no intelligent personality left to make a deed. German S. & L. Soc. v. LeLashmutt, 67 Fed. 399; Delafield et al. v. Parish, 25 N. Y. 9; Van Deusen v. Sweet, 51 N. Y. 378; Aldrich v. Bailey, 132 N. Y. 85, 30 N. E. 264;; Castro v. Geil, 52 Am. St. Rep. 84; Rogers v. Blackwell, 49 Mich. 192; Estate of Desilver, 28 Am. Dec. 645; Rogers v. Walker, 47 Am. Dec. 470; Griswold v. Butler, 3 Conn. 227; Elder v. Schumacher, 33 Pac. 175, 13 Cyc. 573.

MORGAN, C. J. Plaintiff brought this action to set aside a deed of real property executed and delivered by him to the defendant, his brother, on December 26, 1889. The complaint alleges that the plaintiff was at said time in such mental and physical condition through the excessive drinking of intoxicating liquors that he was

in danger of sudden death, and that it was agreed between him and the defendant, at defendant's solicitation, that plaintiff should convey the land to the defendant, and that the defendant agreed to convey the same to plaintiff's wife; that plaintiff thereupon conveyed the land to the defendant, but defendant has since refused to convey the land to the plaintiff's wife; that defendant has been in possession of said lands since and including a part of the year 1895, and has appropriated all the crops raised thereon; and that the value of the rents and profits of said land is the sum of $1,000 per annum.   The answer denies these allegations, except as to possession, and alleges that said deed was given to him as security for money then owing to defendant from plaintiff, and for security for liability incurred by defendant in becoming plaintiff's security on notes given by him to others, and as security for future advances.   The defendant also sets forth in the answer a counterclaim in substance as follows: That on September 17, 1894, plaintiff was indebted to the defendant in the sum of about $2,284.75 for money loaned, and that these parties had a settlement on that day which resulted in a conveyance of said land by plaintiff to defendant by warranty deed, in consideration of the satisfaction and discharge of all of plaintiff's indebtedness and liability to defendant; that such settlement was fully consummated on that day; and that defendant went into possession of said land and cultivated the same, and has ever since been in possession thereof.   The plaintiff interposed a general denial to all the allegations of the reply. The trial court found that the deed of December 26, 1889, was a mortgage, and further found that the deed of September 17, 1894, was given when the plaintiff was entirely incapacitated from knowing what he was then doing by reason of his intoxication, and ordered said deed set aside upon payment by plaintiff to defendant of the amount adjudged to be due and owing to him by plaintiff, after allowing as credit thereon $250 per annum, the annual rental value while defendant was in possession.   Defendant has appealed from said judgment, and demands a review of the entire case under section 5630, Rev. Codes 1899.

It will be noticed that the trial court found against the plaintiff so far as the allegations of the complaint are concerned. This finding is not expressly challenged by the plaintiff on the appeal, although its correctness is not conceded.   It therefore follows that there is no issue to be determined on this appeal as to the relation between the parties arising out of the deed of Decem-

ber 26, 1889. This deed was a mortgage in equity, although an absolute warranty deed in terms. The important issue that remains to be decided is as to the circumstances under which the deed of September 17, 1894, was given, and the legal effect under the evidence of the giving of that deed. There is a direct conflict in the evidence as to the circumstances under which the deed was given. Plaintiff contends that he has no memory of the giving thereof, and that, if he signed it, he was so drunk at the time that the deed was void. He further contends that the defendant induced him to begin drinking in August, 1894, and encouraged him in continuing on a long drinking spree, which ended in his becoming incompetent to do any business, that he might procure a deed of this land from him. The evidence shows that plaintiff had been using intoxicating liquors for over three weeks before September 17th. He was intoxicated during a part of every day of that time. He drank large quantities of liquor, and at times was unable to walk at all during that time. He was often drunk, and was not entirely free from the influence of liquor during most of the time. During these days he generally staggered while walking and was boisterous and abusive in his talk. He constantly showed, by his conversation, appearance and actions, that he was on a debauch. He also used morphine occasionally during this time. He neglected his farming affairs and spent money freely. He lived two and a half miles from Hatton and spent much of his time there, but generally went home nights, and often took his liquor home with him and drank during the night. A few days after September 17th he was taken before the insanity board of Grand Forks county on the application of his wife and lodged in jail. He was not committed to the asylum, but was allowed to go home on parole as he states. He was taken before the board, not with a view to having him sent to the asylum, but, as is to be fairly inferred from the evidence, to induce him to stop drinking. The fact of his having been intoxicated during this time is proven by the testimony of his neighbors and the business men of Hatton. Over a dozen witnesses testify to that fact, and from their having seen him during this time and from his actions and appearance they further testify that they did not think him capable or competent to intelligently transact any important business while in the condition in which they saw him. Four of these witnesses saw him on September 17th, but two of these did not see him until late in the day, several hours after the deed was de-

livered, and they testify that he was intoxicated when they saw him. The plaintiff's signature was duly witnessed, and defendant acknowledged the deed before a notary public at Hatton. The notary public was not a witness at the trial. The attesting witnesses were sworn, and one of them, defendant's attorney of record in the case, testifies that he was not intoxicated, and the other witness did not particularly observe him, but saw nothing in his actions indicating his present intoxication. Plaintiff's wife testified that he drank during the night of September 16th, and says that he was not as drunk as usual on September 17th. Plaintiff transacted other business with parties on the morning of the 17th, and their testimony tends to show that they did not consider him capable of intelligently transacting business at that time. The defendant testifies that plaintiff was sober during the 17th of September, and plaintiff testifies that he has no recollection whatever of the transactions of that day. Plaintiff drank nothing during that day until the settlement was completed, although he had all the appearance of having been on a protracted debauch. He is a man of good business ability, has a fair education, and was prosperous as a farmer. He had drank liquors to some extent since 1883, and during and since 1889 has been accustomed to continue drinking and become intoxicated at irregular periods. The witnesses Gowran and Adams, who transacted business with plaintiff on the morning of September 17th, before the deed was signed, testify that they had considerable trouble in getting him to settle up their matters, but that he finally gave them orders for certain grain in the elevators to satisfy their liens. They both say that he was unfitted for business. Mr. Gowran states his opinion to be that "a man addicted to drink, or that has been under the influence of it sufficient to have the face that he had, wouldn't have sufficient judgment for any business." He further says that he exercised judgment and that he understood the business that he transacted with him, although not so fully as a person would who had never drank.

The settlement was agreed to between Mr. Sorley and plaintiff near plaintiff's residence. Mr. Sorley was there at defendant's request. He went there to procure a settlement of all matters unsettled between the brothers. After all items of account between them had been considered and adjusted, plaintiff said that he was unable to pay, and Sorley suggested that he sell the land to defendant. After some talk the price was agreed upon at $2,300

after Sorley had submitted the matter to defendant. They went to defendant's home to draw up the deed, and went there at plaintiff's request. At defendant's house, one-half mile distant from plaintiff's home, the deed was drawn up, signed and witnessed. They went to Hatton, where the deed was acknowledged, and three notes, marked "Paid" by Sorley, were turned over to plaintiff. Plaintiff signed a contract to sell certain mortgaged wheat at private sale, and that the proceeds be applied on defendant's indebtedness, not included in the $2,284.75. Defendant did not record this deed on advice of his counsel that it was unnecessary if he took possession. Defendant had knowledge that the plaintiff had been drinking to excess between August and September 17th.

It remains to determine what conclusions are deducible from the evidence upon the following questions: (1) Was the deed void? (2) If not void, was it voidable at the election of the plaintiff? (3) Was the settlement fairly and honestly made, in view of the fact that the relation of mortgagor and mortgagee had hitherto existed between the parties? (4) If not so made, and the giving of the deed was voidable at the time, has plaintiff ratified the giving of the deed by not attacking its validity promptly?

Upon the first question we find that the evidence will not sustain a conclusion that the deed was given when there was an entire want of understanding on the part of the plaintiff as to what he was doing. Whether the contract or deed of an intoxicated person is ever entirely void on the ground, alone, that it was given while intoxication continued and rendered the person entirely without understanding or judgment, we need not determine as a question of law. The authorities are in conflict on this question. Conceding, for the purposes of this case, that the deed of an intoxicated person who is entirely without understanding is void, and that section 2706, Rev. Codes 1899, providing that "a person entirely without understanding has no power to make a contract of any kind," applies to contracts made while a person is temporarily intoxicated, we would nevertheless be forced to find that the plaintiff was not in that condition when he made the settlement and gave the deed. But there is hardly any conflict in the authorities upon the question as to whether a deed given while a person is in an intoxicated condition is voidable at his election. It is generally held that he may avoid his deed under such circumstances. The general rule is stated in 17 Am. & Eng. Enc. Law, p. 401, as follows: "Where a person seeks to avoid responsibiltiy for a con-

tract on the ground of intoxication alone, it must appear that the drunkenness was so excessive that he was utterly deprived of the use of his reason and understanding and was altogether incapable of knowing the effect of what he was doing. Any degree of intoxication which falls short of this will furnish no ground for release, in the absence of fraud on the part of the other contracting party." Tested by this rule, we are strongly inclined to the view that the facts do not bring the plaintiff within its application. Considering everything that was done and said by him on September 17th, and his condition prior thereto, we should hesitate long before deciding that he was in such condition that he did not understand the effect of his settlement and deed of that day. Plaintiff drank nothing during that day until after the transactions were all closed. Nothing is shown in his conduct or by his words indicating that degree of incapacity that will avoid the deed. During the whole day he did not show in any way that he was not in his normal mental condition. He probably drank during the night previous, and the effects of such drinking had not entirely passed; but that fact is far from being a good ground for finding him wholly incapacitated from understandingly transacting business. But we are agreed that plaintiff's conduct and inaction, after he had become entirely sober and entirely free from the effects of excessive drinking, are sufficient grounds for denying him relief. Hence the question of fact as to whether the deed was voidable on account of his condition will not be further considered. Plaintiff did not act promptly in asking to have the deed set aside, and he has by such inaction ratified this deed, conceding that he could have avoided the deed, had he acted.

The following facts convince us that he is entitled to no relief: This conclusion is reached from the evidence of facts that transpired on September 17th, and from what the evidence shows his condition to have been on that day. Whether he was capable of understandingly making a settlement and signing the deed depends upon his condition on that day. His condition days or weeks before that day, or on days following, has alone but a very remote bearing on the question as to his condition on September 17th. It is undisputed that the plaintiff has not drank intoxicating liquors, except occasionally and to a very limited extent, since about October 19, 1894. Since that time he has been sober, and at all times conceded to have possession of his full mental powers. After receiving the deed, defendant went into possession of this land and plowed

it in the fall of 1894. In 1895 he put the same into crop and harvested it, and appropriated the crops to his own use. This has been done by him every year since, and up to the present time. The plaintiff had been in possession of and cultivated the land up to and including the 17th day of September, 1894. The plaintiff acknowledged that he knew that the defendant was in possession thereof since the year 1894, or early in 1895. When the settlement of all their mutual accounts was made and the deed delivered on September 17th, three notes, aggregating in amounts about $1,600, were marked "Paid" and turned over to the plaintiff by defendant. These notes were kept by the plaintiff and introduced in evidence at the trial. At the conclusion of the settlement, when the deed was delivered, plaintiff was paid a small sum of money, being about $16—the difference between the aggregate indebtedness and the price agreed upon for the land, $2,300. The plaintiff admits in his evidence, in answer to questions by his counsel, that defendant informed him early in 1895 that he was the owner of the land in question. In the same year the following conversation was had between plaintiff and defendant: "Q. What did you say to him, and he to you? Ans. Well, we did not have a long conversation, and I asked him how things were, and he says they are all fixed up. I says, 'How is that?' He says, 'I have had an attorney over there to straighten things out with you, and I am through with it' Yes; he said he had to leave it to an attorney to get it fixed up legally." This conversation and the other facts stated conclusively show that the plaintiff learned early in 1895 that the defendant claimed the land as his own, and plaintiff did nothing towards moving to set aside or disaffirm the settlement until the year 1900, and did not begin this suit until nearly seven years after the deed was given. It is true plaintiff claims that he said to the defendant, when they met on the highway, that defendant would have to settle, or words to that effect. Plaintiff testifies that in 1898 defendant informed him that he had a deed to this land, and plaintiff said we will test that. These matters of casual conversation do not excuse nor justify the long delay. Defendant has at all times since September 7th claimed the land as his own.

From these facts we have no hesitation in holding that the plaintiff ratified the sale, and cannot now invoke the aid of a court of equity to relieve him from his contract. He should have disaffirmed his contract promptly upon learning of it, or of facts suf-

ficient to put him upon inquiry. No adequate excuse is offered for the long delay in asserting his rights. Defendant informed him in 1895 that he was through with the matter and that everything was settled. The relationship between the parties, and the fact, as testified to by the plaintiff, that he hoped that defendant would act as a brother should, and that he thought that he would finally settle with him, are not sufficient reasons to excuse his failure to move promptly in the legal assertion of his rights as he now claims them. A person will not be allowed to wait, and determine after unreasonable lapse of time, whether a contract be disadvantageous to him or not, before rescinding it. He must determine promptly upon recovering his judgment whether he will abide by his contract or repudiate the same. No definite time can be fixed for his so doing, but each case will be disposed of upon its own circumstances. Drake v. Wild, 65 Vt. 611, 27 Atl. 427; Hammond v. Wallace, 85 Cal. 522, 24 Pac. 837. 20 Am. St. Rep. 239; Rowe v. Horton, 65 Tex. 89; Amey v. Cockey, 73 Md. 297, 20 Atl. 1071; Hatch v. Kelly, 63 N. H. 29; Jones v. Cullen, 142 Ind. 335, 40 N. E. 124; Fuller v. Montague (C. C.) 53 Fed. 204. In this case the evidence shows that the value of the land has materially increased during the seven years that followed the giving of the deed. In 1894 the sum of $2,300 was not far from its actual cash value. The court found it worth $2,500. There is competent evidence in the case that it was worth much less. It is now worth $6,000. We are satisfied that it is the increased value of the land that is the incentive to the bringing of this suit. Mahon v. Leech, 1 N. D. 181, 90 N. W. 807; Wadge v. Kittleson, 12 N. D. 452, 97 N. W. 856. It would be inequitable to permit the plaintiff to get his land back at its increased value, with the rental value during all these years, and to allow the defendant legal interest only. The plaintiff should have avoided such a condition promptly by attacking the conveyance, or show some valid reason for not doing so.

The plaintiff claims that, coupled with his alleged intoxication, the facts should be considered that the defendant employed an attorney to procure the settlement, and that plaintiff was thereby surprised and made the settlement under coercion, and that the settlement was unfair and should be set aside on that ground, as the relation of mortgagor and mortgagee existed between the parties, which fact causes courts of equity to scrutinize all transactions of the sale of the equity of redemption. These matters are

disposed of on the grounds stated in relation to the question of the alleged intoxication of the plaintiff. The plaintiff has ratified the deed by not moving to set aside the deed promptly, or at least within a reasonable time after he became free from his alleged incapacity.

The judgment is reversed, and the district court is directed to order judgment for the defendant. All concur.