A. M. CHRISTENSEN, Plaintiff and Respondent,

v.

Fanny LARSON, Administratrix of the estate of Alvin S. Larson, deceased, Christ Reum, Bank of North Dakota, Jack Haman, Dan Kelly, Floyd Stebleton, Alfred Larson, Alma Wagar, Tillie Wik, Selma Patterson, Nora McGilvary, Albertine Reum, Selma Antonson and Emma Towe, Walter R. Spaulding, Defendants and Appellants.

No. 7546.

Supreme Court of North Dakota.

May 10, 1956.

Rehearing Denied June 25, 1956.

Higgins & Donahue, Bismarck, for appellants.

Joseph P. Stevens, Minot, for respondent.

SATHRE, Judge.

On November 24, 1950, Alvin S. Larson was the owner of the following described real estate situated in McHenry County, North Dakota:

The East Half of the Southeast Quarter (E½ SE¼) of Section Twenty-three; the East Half of the Northeast Quarter (E½ NE¼) of Section Twenty-three; the Northeast Quarter of the Northwest Quarter (NE¼ NW¼) of Section Twenty-three (23); the Northwest Quarter of the Northeast Quarter (NW¼ NE¼) of Section Twenty-three (23); the North Half of the Southwest Quarter (N½ SW¼) of Section Twenty-four (24); the Southwest Quarter of the Southwest Quarter (SW¼ SW¼) of Section Twenty-four (24) all in Township One Fifty-seven (157) North of Range Seventy-six (76), McHenry County, North Dakota, amounting to approximately three hundred and sixty (360) acres.

On November 23, 1950 which was Thanksgiving Day, Glenn Thompson telephoned the plaintiff A. M. Christensen at Minot that he understood that Alvin S. Larson intended to sell his land. On November 24, the plaintiff A. M. Christensen, Glenn Thompson, Ralph Christensen, drove to Towner and visited several business places looking for Alvin S. Larson. They did not find him, so they drove out to his farm where he was found. He seemed to be busy with some people who were buying some of his personal property. The plaintiff Christensen asked Larson if his land was for sale and he said it was. He stated that he had offers for his land from other people for $1,800 and for $2,800. It was finally agreed that Larson would sell his land consisting of 360 acres to the plaintiff A. M. Christensen for $3,600. Alvin S. Larson, A. M. Christensen, Glenn Thompson and Ralph Christensen then drove to Towner. Mr. Larson wanted to go to the law office of Mr. Stiehm but Mr. Stiehm was not in the office so they went to the law office of Mr. Spaulding. He was away but his secretary was in the office. They waited for some time but Mr. Spaulding did not return to the office. After some discussion among the parties Mr. Christensen, the plaintiff, dictated a contract for sale of the real property in question to Mr. Spaulding's secretary who typed it for them on the typewriter. It was introduced in evidence as plaintiff's exhibit 1, and is as follows:

Agreement

Dated November 24, 1950.

It is hereby agreed by and between A. M. Christensen, of Minot, North Dakota, party of the first part, and Alvin S. Larson of Towner, North Dakota, party of the second part,

That party of the first part hereby agrees to purchase from said party of the second part, and said Alvin S. Larson agrees to sell the following described lands situated in the County of McHenry and State of North Dakota.

(Same description as shown above)

Said party of the first part agrees to assume all existing recorded mortgages now held by Christ Reum of Kremlin, Montana, of the approximate amount of Seven Hundred Dollars ($700.00), mortgage of ap-

proximately Seven Hundred Dollars ($700.-00) to the Bank of North Dakota, and Six Hundred Dollars ($600.00) to Jack Haman of Towner, North Dakota.

Party of the first part agrees to pay a total of Thirty-six Hundred Dollars ($3600.00) to said second party in payment of all of said land. From said Thirty-six Hundred Dollars ($3600.00) purchase price is to be deducted the sum of Twenty-two Hundred Dollars ($2200.00) for mortgages which shall be assumed by party of the first part, which will leave a balance of Fourteen Hundred Dollars ($1400.00) payable to party of the second part. And all personal property of whatever nature now located on the above described land is also conveyed to party of the first part. It is understood that party of the second part may remove any clothing or such personal items as he may need.

Party of the first part hereby makes a down payment of One Hundred Dollars ($100.00) to apply on the purchase price of said real estate and personal property, the balance payable on demand of party of the second part with payments of not less then Fifty Dollars ($50.00) per month to be sent to said Alvin Larson, party of the Second Part, until he shall have received full payment.

Party of the first part also agrees to purchase one 1936 Model Ford Coupe, Motor No. 3170132, for a total payment of One Hundred Dollars ($100.00), payment to be made upon receipt of title to said vehicle.

A. M. Christensen,
Party of the First
Part.

Witnesses:

Anna Burkhardsmeier    Alvin S. Larson,

Glenn Thompson    Party of the Second part.

The contract was signed by Alvin S. Larson and A. M. Christensen in the presence of Mr. Spaulding's secretary who was one of the witnesses thereto. Mr. Christensen the plaintiff then handed Mr. Alvin S. Larson a $100 bill. Mr. Christensen and Mr. Larson then left the office and went to different business places where they paid some bills of Mr. Larson's. They first went to the drug store and paid Mr. Larson's bill of $4; Larson handed the druggist the $100 bill and he took out $4 in payment of his account and gave the balance to Mr. Larson. They then returned to Mr. Spaulding's office and it was agreed that they should meet there the following day, Saturday, to complete the details of the land deal.

Under the terms of the agreement the plaintiff was to assume the following incumbrances as part of the purchase price: a mortgage of $700 to Christ Reum of Kremlin, Montana; a mortgage of $700 to the Bank of North Dakota; $600 due from Alvin S. Larson to Jack Haman of Conlin, North Dakota.

The next day when they met in the office of Mr. Spaulding it was discovered that Larson had previously given a lease of his land, plaintiff's exhibit 4 to one Dan Kelly for a period of three years at a cash rental of $150 per year. The first year's rental had been paid. Mr. Larson and the plaintiff Mr. Christensen then drove out to see Mr. Kelly, and it was finally agreed that he would release and cancel the lease upon payment to him of $600. A notation to that effect was endorsed at the bottom of the lease and signed by Dan Kelly. On the following day November 25, 1950 Alvin S. Larson executed a warranty deed, plaintiff's exhibit 2, to A. M. Christensen which deed was signed and acknowledged before Mr. Spaulding, and on the same day the plaintiff A. M. Christensen issued his check in the sum of $3,500, plaintiff's exhibit 3, the balance due upon the purchase price, which check was issued to Floyd Stebleton, agent for Alvin S. Larson, with the understanding that Stebleton was to pay the encumbrances against the land according to the agreement and that the balance remaining should be turned over to Alvin S. Larson. The check was not delivered to Stebleton, but was left in the possession of Mr. Spaulding until the final details of the transaction were completed.

Alvin S. Larson was accidently killed on November 29, 1950, and it does not appear

that any further action was taken until some time in February 1951 when probate proceedings in the matter of the estate of Alvin S. Larson were commenced in McHenry County, and his sister Fanny Larson was appointed Administratrix of his estate. Inventory and appraisement was filed by the Administratrix which included personal property of the value of approximately $150. It also included the real estate described herein which the plaintiff claims that he purchased from the deceased.

Thereafter the plaintiff A. M. Christensen filed and presented to the county court of McHenry County, North Dakota, his verified petition for an order of said court authorizing and requiring the administratrix of the estate of said Alvin S. Larson, deceased, to execute a conveyance of said land to the plaintiff in accordance with the terms of said written agreement between the plaintiff and the said Alvin S. Larson made in his lifetime. On the 31st day of May 1951, the said petition came on for hearing in the county court of McHenry County and thereafter on the 28th day of July 1951, the said county court made its decision dismissing plaintiff's petition and other proceedings had thereunder.

The plaintiff then brought this action alleging that under the agreement of sale referred to herein and the warranty deed executed by the said Alvin S. Larson the plaintiff was entitled to a deed of the said described premises, and that the plaintiff had made a part payment and was ready, able and willing to pay the balance due on said purchase price to-wit: the said sum of $3,500 represented by the check which had been issued to the said Floyd Stebleton as agent for the said Alvin S. Larson. Demand is then made that judgment be entered requiring the administratrix of the estate of said Alvin S. Larson, deceased to execute and deliver to the plaintiff a good and sufficient warranty deed to the said described premises in accordance with the terms of the said agreement for sale and said warranty deed executed by the said Alvin S. Larson in his lifetime.

Alvin S. Larson was a single man and his heirs at law and next of kin who were named as defendants were his brother Alfred Larson, his sisters, Alma Wagar, Tillie Wik, Fanny Larson, Administratrix of his estate, Selma Patterson, Nora McGilvary and Albertine Reum, and his two nieces, Selma Antonson and Emma Towe, daughters of a deceased sister.

The defendants answered alleging that on the 24th day of November 1950 when the said agreement of sale was entered into and for many weeks prior thereto the said decedent Alfred S. Larson was in fact habitually intoxicated and had become an habitual drunkard and that his mind had become so affected by excessive and continued drinking that he was legally incompetent and incapable of entering into a valid contract or agreement for the sale of his land, and that the plaintiff well knew of the condition of the said deceased at the time that the said agreement of sale was entered into.

The answer further alleges that if said Alvin S. Larson did in fact enter into any contract or make any agreement with the plaintiff then same was entered into under duress and undue influence on the part of the said plaintiff and his agents and that such agreement was procured by fraud on the part of the plaintiff by persuading the said decedent to pay a large sum of money, to-wit: $600 or thereabouts to Dan Kelly for the benefit of said plaintiff and without any benefit whatsoever to the said decedent.

The case was tried in the district court of McHenry County to the court without a jury. The trial court found for the plaintiff and directed delivery to the said Floyd Stebleton of the deed in question and the check for $3,500 and that upon report by said Stebleton that he had complied with the terms of the agreement between the parties that he deliver to the plaintiff the warranty deed of November 25, 1950 executed by the said Alvin S. Larson to the plaintiff.

The defendants appealed from the judgment and demanded a trial de novo in this court.

The issue in the instant case is whether Alvin S. Larson was mentally competent at the time he entered into the contract for sale of his land to the plaintiff November 24, 1950 and the execution of the warranty deed November 25, 1950. There is considerable testimony in the record that he drank heavily and very often became intoxicated for several months before these transactions, but there is no evidence that he was intoxicated when he signed the contract and the deed.

Miss Burkhardsmeier, Attorney Spaulding's secretary, testifying for the plaintiff, stated that she did not know Larson personally but knew him only as a client of Mr. Spaulding's; that Larson and A. M. Christensen, the plaintiff, came to Mr. Spaulding's office in the afternoon of November 24, 1950; they wished to see Mr. Spaulding but he was not in, and after some discussion between the parties Mr. Christensen dictated to her the sales agreement referred to herein and that Mr. Larson said a few words. She said she did not know whether Larson had been drinking; that "I would not have had him sign it if he had been". She did not distinguish any odor of liquor from him. The contract of sale, plaintiff's exhibit 1, was typed by her, and she dated it at the top the same day, and it was signed by both parties in her presence and she signed it as a witness. She stated further that Larson and Christensen were to come back the next day to Spaulding's office and complete the agreement.

Mr. Glenn Thompson, a witness for the plaintiff testified that he was present in Spaulding's office when the contract between A. M. Christensen and Alvin S. Larson was prepared and signed and that Larson was sober; that after the contract was signed and he saw Mr. Christensen hand Alvin Larson a one hundred dollar bill, and Larson and Christensen left the office for a short time, and he understood that Larson had paid some accounts out of the one hundred dollars, and when they returned to the office the balance of the money was placed in an envelope and given to Larson. He was also present the following day when the plaintiff, Larson, and Ralph Christensen met in Mr. Spaulding's office and that Larson was sober when he executed the warranty deed.

Homer Hill, the druggist who made change of the one hundred dollar bill November 24, 1950, the day the agreement of sale was entered into, said he had known Larson twenty-seven years, and he stated that in his opinion Larson had not been drinking and was not intoxicated. Attorney Spaulding who drew the warranty deed on November 25, 1950 stated that "he (Larson) might have been drinking to some extent but he was far from intoxicated, however." He stated further that he would say that Larson understood what he was doing, and that he would not have taken Larson's acknowledgment to the warranty deed if Larson had not been sober. Martin Pietz testified that Larson was with him on Thanksgiving Day the 23rd of November, and that Larson rode with him from Granville to Towner on the morning of the 24th, and that Larson had not had any liquor when he left him at Towner in the middle of the forenoon. He was picked up shortly thereafter on his farm by A. M. Christensen, Glenn Thompson and Ralph Christensen. Dan Kelly testified that when Larson and Christensen came to his farm on November 25th, Larson was sober. Several other witnesses testified that they had seen Alvin Larson intoxicated many times and that he was a habitual drinker but none of them testified that Larson was drunk on November 24th or November 25th, 1950.

Bennie Iverson testifying for the defendants stated that he had been in the Police Department of the City of Towner for sixteen years, and that during that time had known Alvin S. Larson; he stated that Larson "used to get awful drunk;" and he had seen Larson the day after Thanksgiving 1950, either in front of the Recreation Parlor or Mr. Spaulding's office between 3 and 4 in the afternoon, and

that there were indications that he had been drinking. However he did not talk to Larson and he did not notice any odor of intoxication. This testimony of Iverson is the only testimony in the record as to any indication of intoxication on the part of Larson either on November 24th or 25th.

Fanny Larson, sister of Alvin Larson and administratrix of his estate, testified that she came to the farm of her brother Alvin every fall and assisted him with his business affairs, and that from time to time she had given him financial aid; that she visited him in September 1950; and that she had not seen her brother Alvin intoxicated until on one occasion in September 1950. She had been employed in the offices of lawyers and was somewhat familiar with guardianship proceedings, but had never taken any steps to have a guardian appointed for her brother. Another sister, Nora, visited him for three weeks in 1948 and did not notice any excessive drinking at that time.

■ There is therefore a lack of any competent evidence that Larson was intoxicated at the time when he signed the contract of sale and executed the warranty deed.

■ As to the degree of intoxication necessary as a defense to an action on a contract, 17 C.J.S., Contracts, § 133, page 483, states the rule as follows:

"Although the rule formerly was that intoxication was no excuse and created no privilege or plea in avoidance of a contract, it is now settled that intoxication which is so deep and excessive as to deprive one of his understanding is a good defense to a contract made while in that condition, even though the intoxication was voluntary, since one in such a condition lacks the mental capacity requisite to contract, and to take advantage of his condition constitutes constructive fraud. If intoxication alone is relied on as a defense, it must be to such a degree that the party who wishes to avoid his contract on this ground must have been deprived of his reason and understanding, to such an extent that he is incapable of comprehending the nature and consequences of his act. Where intoxication is superinduced by the other party, with fraudulent intent, a less degree of incapacity may suffice to avoid the contract. However, in the absence of fraud it has been held that a contract may not be invalidated by the mere intoxication of one of the parties, or mere excitement from the use of liquor, even to the extent that the party did not clearly understand the business, could not give proper attention to the contract, could not give the attention which a reasonably prudent man would have given, did not 'fully' realize what he was doing."

And in 28 Am.Jur. Section 59, Insane and other Incompetents, page 697 it states:

"The incompetency which is offered to show the invalidity of a contract or conveyance must, regardless of its character, exist at the time of the act in question. Irrationality before or after the transaction in question is important, so far as the validity of the transaction is concerned, only to the extent that it bears upon the competency of the contracting party or grantor at the time of the transaction. To illustrate, although a grantor, from habitual dissipation or other causes, was in such a depleted, enfeebled, and declining state of mind or body immediately before or immediately after the date of the deed as to render him incompetent to transact business, yet if it appears that on the occasion when the deed was executed he was sober and of sufficient general capacity to dispose of his property with an intelligent understanding of what he was doing, the deed cannot be canceled on the ground of his mental incapacity or general incompetency. Contracts made by persons while sane may be enforced, although the person making the contract or incurring the liability has since become insane or otherwise incompetent. Accordingly, if a person is sane when he

enters into a contract, he is answerable for his subsequent breach thereof, committed by him while insane. Moreover, it appears that a contract, which is otherwise voidable because one of the parties was insane at the time he signed it, may not be avoided on that ground if it appears that it was executed in pursuance of an obligation assumed by him while he was sane."

The question as to the degree of intoxication necessary to avoid a contract was considered by this court in the case of Hauge v. Bye, 51 N.D. 848, 201 N.W. 159, 162, 36 A.L.R. 613. It is there stated:

"Leaving wholly on one side the question whether, in these circumstances, the plaintiff can be heard to assert his alleged intoxication as a defense to the settlement agreement (6 R.C.L. pp. 595–597; Spoonheim v. Spoonheim, 14 N.D. 380, 104 N.W. 845; sections 4343, 5842, 5852, C.L. 1913), he could not avoid the contract unless his 'drunkenness was so excessive that he was utterly deprived of the use of reason and understanding, and was altogether incapable of knowing the effect of what he was doing. Any degree of intoxication which falls short of this will furnish no ground for release, in the absence of fraud on the part of the other contracting party.' 17 Am. & Eng. Ency. Law, p. 401; Spoonheim v. Spoonheim, 14 N.D. 380, 386–387, 104 N.W. 845."

The evidence in the instant case is uncontradicted that Alvin S. Larson was not intoxicated at the time he signed the contract of sale and executed the deed to A. M. Christensen. In light of the general rule of law quoted and the evidence we are of the opinion that Alvin S. Larson was mentally competent when he entered into the transactions involved in this action.

There is one feature in this case that requires some consideration. As pointed out herein when the parties were negotiating for sale of the land in question by Alvin S. Larson to plaintiff Christensen, it was discovered that there was an outstanding lease executed by Alvin S. Larson to one Dan Kelly for a period of three years at a rental of $150 per year. Mr. Christensen the plaintiff and Alvin S. Larson then went to the farm of Dan Kelly and Larson asked Dan Kelly to release the lease in question. Kelly had made the first payment upon said lease in the sum of $150. After some discussion it was agreed that Dan Kelly would release the lease upon receipt of the sum of $600 which included the $150 already paid. A notation was then made on the bottom of the lease in the form of an order upon Floyd Stebleton to pay to Dan Kelly the sum of $600 out of funds held in trust by said Floyd Stebleton for or belonging to Alvin S. Larson. It stated as follows:

"I do hereby release the within lease and all rights running to me under the same of the within agreement. Said agreement to be in all things cancelled and terminated."

This notation was made in the office of Attorney Spaulding on November 27, 1950 and was signed by Dan Kelly. It was also witnessed by Mr. Spaulding and by A. M. Christensen. It appears that on the same day Dan Kelly attempted to collect the $600 from Mr. Stebleton, but found that the bank was closed and he did not get his money. He then went to Spaulding's office and in the absence of Mr. Larson deleted his signature from the release which had been endorsed on the lease, and the following notation appears: "Deleted. 11–27–50 W.R.S." The letters W.R.S. evidently are the initials of W. R. Spaulding.

Alvin S. Larson was accidently killed on November 29th, 1950 and for that reason the matter was held in abeyance until the commencement of this action.

It is contended by the defendants that A. M. Christensen through fraud and undue influence induced Larson to agree to sell the land to him for a wholly inadequate consideration. Some of defendants' witnesses testified that the Larson land was worth much more than Christensen agreed to pay for it and one witness at least testi-

fied that it was worth twice as much as the sum that Christensen agreed to pay for it. Other witnesses testified that the price was fair and all that the land was worth, and another witness testified that a quarter in the same neighborhood which was sold for $1,800 was much better land than the Larson land. Still another farmer in the community testified that a quarter section of land near the Larson land was sold some time earlier for $1000 and that it was better land than the Larson land. The plaintiff testified that in 1950 be bought 480 acres of good land from the State at public sale for which he paid a little more than $11 per acre. It is evident therefore that in the judgment of some of the witnesses the Larson land was worth less than the amount agreed to be paid for it by Mr. Christensen, and others were of the opinion that it was worth more. Considering all of the evidence as to values of land in that community we cannot say that the price Mr. Christensen agreed to pay for the land was so far below its value as to warrant an inference that he was guilty of fraud and undue influence in his negotiations with Larson for the sale of the land.

It is established by the evidence that A. M. Christensen did not attempt to negotiate with Alvin S. Larson for the purchase of his land until he had been informed that his land was for sale. He then contacted Larson and Larson stated that his land was for sale and that he had been offered $1,800 and $2,800. Christensen offered $3,600 and Larson accepted it. Then followed the meetings in the law office of W. L. Spaulding, at Towner, North Dakota, where the agreement for sale was prepared and signed on November 24, 1950, and the warranty deed to A. M. Christensen executed by Alvin S. Larson November 25, 1950. A. M. Christensen paid Larson $100 on November 24, as part payment which Larson accepted. On November 25, A. M. Christensen issued a check to Floyd Stebleton, "Agent Alvin S. Larson", in the sum of $3,500 balance of the purchase price. The understanding was that Stebleton was to pay the incumbrances upon the land as stated in the written agreement between Larson and Christensen. The check was to be left in Mr. Spaulding's possession until the liens and mortgages on the land were checked. Spaulding's testimony in regard thereto is as follows:

"Q. What did either of these men ask you to do with reference to the completion of the arrangement? A. I was asked to check the records and determine what liens were against the land involved and to do anything to release them before completion of the transaction, that is the completion of the delivery as I stated before".

"Q. That was out of the monies which were left? A. That is right.

"Q. I show you exhibit 3, (check for $3500.00) and ask you if that represents the funds that were left with you? A. Yes, as I recall it now the instructions were given by Mr. Christensen but in the presence of Mr. Larson and Mr. Larson agreed to what was said."

With reference as to whom the check should be made payable Mr. Spaulding testified as follows:

"Q. Mr. Spaulding, what, if anything was said by Mr. Larson or Mr. Christensen and by which if you remember as to whom the check should be payable? A. At the time the deed was drawn you mean?

"Q. Or at any time? A. Later on in the day there was some discussion as to the depositing the money for the purpose of paying off liens and also the payment to Alvin Larson. Larson took part in that conversation. He suggested that Glenn Thompson hold the money for him. Glenn Thompson refused and we were discussing the matter when Floyd Stebleton came into my office. Either Mr. Christensen or I suggested Mr. Stebleton as the agent to handle the money.

"Q. Did Mr. Larson indicate in any manner the agreement or disagreement to this arrangement? A. He agreed to the arrangement."

Later, the same day, Larson executed a written order, plaintiff's exhibit 5, directing Stebleton to pay an account of $215 owing to one Carl Smette.

It is established by the evidence that during all of these transactions Alvin S. Larson was sober and mentally competent and that he understood the nature of the transactions in which he participated. In this regard Mr. Spaulding testified as follows:

"Q. In appearance was he (Larson) normal and understood the nature of his transaction? A. I would say he understood what he was doing.

"Q. You would not have taken his acknowledgement if he had been? A. That is right."

█ It is established by the record that A. M. Christensen and Alvin S. Larson had entered into a valid written agreement and that it had been fully executed and nothing

more remained to be done by either party. Mr. Spaulding and Mr. Stebleton were authorized by both parties to perform the details of checking the record, paying and discharging the encumbrances against the land, recording the deed from Larson to Christensen and delivering any remaining balance of the money to Mr. Larson.

After a careful examination of the evidence and the entire record we conclude that the judgment of the district court was correct and it is affirmed.

BURKE, C. J., MORRIS and GRIMSON, JJ., and CHARLES L. FOSTER, District Judge, concur.

JOHNSON, J., did not participate, Honorable CHARLES L. FOSTER, District Judge of the Fourth Judicial District, sitting in his stead.